CHESAPEAKE & POTOMAC TELEPHONE COMPANY *v.* UNITED STATES.

No. 389. Argued April 21, 22, 1930.—Decided May 5, 1930.

*Mr. Stanton C. Peelle,* with whom *Messrs. C. F. R. Ogilby, Paul E. Lesh, Dale D. Drain,* and *Jerome F. Barnard* were on the brief, for petitioner.

*Assistant Attorney General Richardson,* with whom *Attorney General Mitchell, Assistant Attorney General Rugg,* and *Messrs. Claude R. Branch,* Special Assistant to the Attorney General, and *Heber H. Rice* were on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit under the Dent Act, March 2, 1919, c. 94, 40 Stat. 1272, to recover upon a contract said to be implied in fact, to pay the cost of installing a very large telephone switchboard for the War Department during the late war, less the amounts realized from the parts when the switchboard was removed. The Court of Claims dismissed the petition, and a writ of certiorari was granted by this Court.

The decision of the Court of Claims went upon the ground that the installation was covered by a written contract between the plaintiff and the Secretary of the Treasury, (Act of June 17, 1910, c. 297; 36 Stat. 468, 531; U. S. Code, Tit. 41, § 7,) and that there was no subsequent contract enlarging the obligation of the Government; it being expressly found that the only persons to whom any suggestion was made that additional pay was expected had no authority to bind the Government, *Jacob Reed's Sons* v. *United States,* 273 U. S. 200, 202; *Baltimore & Ohio R. R. Co.* v. *United States,* 261 U. S. 592, 596, and that the Secretary of War never heard the suggestion or knew that a claim would be made until after the

armistice. We are of opinion that on the findings the decision was right.

The contract in force when the work was completed, June 22, 1918, bound the Telephone Company to " install, equip, and maintain such telephone equipment as may be required in the District of Columbia, and furnish service in connection therewith " at rates set forth, one item being " common battery private branch exchange switchboards, including one operator's set of telephones for each operator's position, each, per annum, $24.00." Although it is argued that neither the Act of June 17, 1910, c. 297, nor the contract covered this unusually large switchboard, we think it too plain for discussion that the words used, taken literally, covered it in terms. The only suggestion that needs a short answer is that this work was so wholly outside anything that was contemplated that a special agreement was necessary or at least just. But war had been approaching and large additions had been made without question until after war was declared, April 6, 1917. A little later the present structure was placed in a separate building erected for it by the United States. The understanding of the parties is shown by the fact that a contract with similar terms was made for the next year on September 25, 1918. The plaintiff sent in and was paid bills for rental at the old rate, for increased rates for the lines and stations, and other unquestioned bills, without any attempt to charge for the expenses of the new structure. The explanation of the slight charges for rentals is simple and makes the whole business clear. The settled policy of the Company was to rely for its chief revenue on mileage charges upon station lines, charges for telephone stations, and local messages. Had the war gone on another year probably it would have made a good deal of money. The American Telegraph and Telephone Company regarded the problem of increased telephone service at the War Department as largely its own, and in fact

has more than reimbursed the plaintiff for its loss. When the plaintiff's district manager told his superior officer that the installation ought to be held up until they got a written order, he was told that they wanted to do everything possible for the Government and would take their chances of getting paid.

There is nothing upon which the Company can found a claim except that in January, 1918, it advised the person who was in charge of the telephone service of the War Department, but whose salary the plaintiff paid, and another under whose general direction the service was, that it expected the Government to pay the cost of the new switchboard, less salvage. There was no assent to this expectation, nor did these officers have any authority to give such assent, and as we have said there was neither assent nor knowledge on the part of those higher up. The fact that plans of the building to be erected by the Government showing the switchboard and equipment proposed were submitted to the Secretary of War is no help to the plaintiff. Of course they were, whichever was to pay the bills. Neither was the continued use of the structure after the plaintiff had made its claims. The Government had to use it, and had the right to use it, whether the Government was bound to pay, or whether, as the plaintiff's engineer said to its district manager, the Telephone Company took the chances of getting paid. The Government had the plaintiff's contract and would have had the right to rely upon it even if it had been informed that the plaintiff was dissatisfied. It seems to us that the dissent of two of the Judges of the Court below is directed rather to the findings than to the statement of the law upon the findings as they stand. These are not open to question before us.

*Judgment affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.