**ANIMAL PROTECTION INSTITUTE OF AMERICA, INC., a California non-profit corporation, and The Fund for Animals, Inc., a New York non-profit corporation, Plaintiffs,**

v.

**Donald HODEL, Secretary of the United States Department of the Interior, Washington, D.C.; Robert Buford, Director of the Bureau of Land Management, Washington, D.C.; Edward F. Spang, Director of Bureau of Land Management, State of Nevada; Thomas J. Owen, District Manager, Bureau of Land Management, Carson City; Don Pomi, Assistant District Manager for the Division of Wild Horses and Burros; M.H. Frei, Program Leader, Wild Horse Specialist; Hillary A. Oden, Director of the Bureau of Land Management, State of Wyoming; and Dean Stepanek, Director of the Bureau of Land Management, State of Montana, Defendants.**

**No. CV–R–85–365–HDM.**

United States District Court,
D. Nevada.

July 8, 1987.

John Ohlson, Reno, Nev., W. Craig James, Boise, Idaho, for plaintiffs.

Lee M. Kolker, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendants.

## ORDER AND JUDGMENT

McKIBBEN, District Judge.

On March 27, 1987 the Magistrate entered Findings with the Court and recommended that Plaintiffs' Motion for Summary Judgment be denied and that Defendants' Motion for Summary Judgment be granted. On April 10, 1987, plaintiffs filed objections to the Magistrate's Findings and Recommendation. Defendants have responded to the objections and after oral argument this matter has been submitted for decision.

The parties have all acknowledged this action should be decided on the pleadings

and record before the court and that there are no issues of material fact to be litigated. The parties have also stipulated that all issues, except one, have been resolved to their mutual satisfaction. The issue remaining before the court is whether defendants should be enjoined and restrained from permitting adoptions of wild horses under the Wild Free–Roaming Horses and Burros Act of 1971 under circumstances where defendants know the horses are being adopted for commercial slaughter or exploitation. While defendants initially moved to dismiss this action as moot, they now appear to concede that adoptions are ongoing and this issue should be resolved in this lawsuit.

In 1971 Congress enacted the Wild Free–Roaming Horses and Burros Act, (the Act) 16 U.S.C. § 1331. Congressional intent is clearly articulated in the policy statement of the Act in which Congress declares:

It is the policy of Congress that wild free roaming horses and burros shall be protected from capture, branding, harrassment or death; and to accomplish this they are to be considered in the area where presently found, as an integral part of the natural system of the public lands.

Congress granted broad powers to the Secretary of the Interior to protect and manage the wild free-roaming horses and burros. The Act provides for a procedure under which the Secretary may remove excess animals from the range to achieve appropriate management levels and specifically provides that:

(A) The Secretary shall order old, sick, or lame animals to be destroyed in the most humane manner possible;

(B) The Secretary shall cause such number of additional excess wild free-roaming horses and burros to be humanely captured and removed for private maintenance and care for which he determines an adoption demand exists *by qualified individuals,* and for *which he determines he can assure humane treatment and care* (including proper transportation, feeding, and handling). Provided, That, not more than four animals may be adopted per year by any individual unless the Secretary determined in writing that such individual is capable of humanely caring for more than four animals, including the transportation of such animals by the adopting party; and

(C) The Secretary shall cause additional excess wild free-roaming horses and burros for which an adoption demand by qualified individuals does not exist to be destroyed in the most humane and cost efficient manner possible. (Emphasis added).

16 U.S.C. § 1333(b)(2)(A), (B), & (C).

When the animals are adopted, Congress has established a mechanism by which title to the animal passes from public to private ownership:

Where excess animals have been transferred to a qualified individual for adoption and private maintenance pursuant to this Act [16 USCS §§ 1331 et seq.] and the Secretary determines that such individual has provided humane conditions, treatment and care for such animal or animals for a period of one year, the Secretary is authorized upon application by the transferee to grant title to not more than four animals to the transferee at the end of the one-year period.

16 U.S.C. § 1333(c). The animals lose their status as wild free-roaming horses and burros upon passage of title:

Wild free-roaming horses and burros or their remains shall lose their status as wild free-roaming horses or burros and shall no longer be considered as falling within the purview of this Act [16 USCS §§ 1331 et seq.]—

(1) upon passage of title pursuant to subsection (c) except for the limitation of subsection (c)(1) of this section; or

(2) if they have been transferred for private maintenance or adoption pursuant to this Act [16 USCS §§ 1331 et seq.] and die of natural causes before passage of title; or

(3) upon destruction by the Secretary or his designee pursuant to subsection (b) of this section; or

(4) if they die of natural causes on the public lands or on private lands where maintained thereon pursuant to section 4 [16 USCS §§ 1334] and disposal is authorized by the Secretary or his designee; or

(5) upon destruction or death for purposes of or incident to the program authorized in section 3 of this Act [this section]; Provided, That no wild free-roaming horse or burro or its remains may be sold or transferred for consideration for processing into commercial products.

16 U.S.C. § 1333(d).

The plaintiffs, Animal Protection Institute of America, Inc. and the Fund for Animals, Inc., have moved for summary judgment permanently enjoining defendants from permitting or allowing "fee waiver" or reduced fee adoptions of wild horses and burros when defendants know or should know that the prospective adopter of such animals would exploit such animals for commercial purposes. Defendants oppose the motion and in their cross-motion for summary judgment contend the Secretary has duly promulgated regulations permitting adoptions of such animals and that as long as the animals are humanely cared for during the one year period provided for in 16 U.S.C. § 1333(c) and title passes, the Secretary has no authority or obligation in connection with the animals.

The parties, in a stipulation filed with the court, have admitted the following:

1. As to adoptions under a reduced or waived fee, as provided by 43 C.F.R. 4750.-4–3(b), it is the policy of Bureau of Land Management (BLM) to inquire into a prospective adopter's ability to provide humane care for otherwise unadoptable wild horses for one year, prior to passage of title to the adopter.

2. It is the BLM's policy to require the signing of a Private Maintenance and Care Agreement, setting forth restrictions on use of wild horses prior to passage of title.

3. The BLM interprets the statute and applicable regulations as not requiring inquiry into any disposition or use of horses after title passes.

4. The BLM acknowledges that, in some instances, horses adopted under a reduced or waived fee have, after passage of title to private individuals, been sold for commercial purposes.

5. In some instances the BLM knew, prior to the placement of wild horses, that wild horses adopted under a reduced or waived fee would, after passage of title, be put to commercial use.

Defendants concede that wild horses are placed out for adoption when, the BLM is aware, prior to the passage of title, that such animals will be commercially exploited. Defendants argue that once title to the animals pass, they no longer have jurisdiction over the use or disposition of the animals. The court does not disagree. But, the inquiry does not, as defendants would suggest, stop there. The waiting period prescribed by Section 1333(c) is designed to ensure that the BLM will have a reasonable time (one year) to satisfy itself that the prospective adopter will treat the animals in a humane manner and not exploit them. If during that period, the BLM becomes aware, as it has on several occasions set forth in this case, that the only purpose for the adoption is to enable the adopter to exploit the animals for a commercial purpose, the transfer of title should not occur. Defendants seem to suggest they are bound by some unwritten requirement to issue title to a prospective adopter after the passage of one year, regardless of any actual knowledge defendants may have that the horses will be commercially exploited once title passes. Such a position defies logic and common sense and is contrary to legislative intent. The adoption portions of the statute were designed to ensure a suitable home for the animals. The Secretary may not abdicate responsibility to place the animals with "qualified" individuals. A "qualified" individual in the adoption context means someone who will care for the animals, not someone who will exploit or destroy them. Excess animals are to be destroyed in a humane manner by the Secretary, not by someone else. 16 U.S.C. § 1333(b)(2)(C). This power may not be delegated to another. Prior to passage of title, the Secretary cannot ignore what a person expresses as his or her intent re-

garding the animals. If the adopter expresses an intent to commercially exploit the animals once title is transferred, the adoption should not be consummated.

This case does not pose the more difficult question of whether the Secretary has an affirmative duty to ascertain the transferees' intent where it is not expressed prior to the transfer of title. That issue is not reached here because the defendants admit the Secretary had actual knowledge the transferees' intent to exploit the animals for commercial purposes upon transfer of title.

Therefore, this decision does not, contrary to the suggestion of the defendants, require the Secretary to determine the intent of the potential adopter with respect to the uses they will make of the horses after title passes. This decision also does not require the Secretary to reclaim horses where title has already passed. Nor does this decision address the question of inquiry notice and the potential resulting costs of enforcement and detection of violators. Those are matters more appropriately addressed by Congress, not this court. What this decision does address are those limited circumstances stipulated to here, where the Secretary knows in advance of the transfer of title that an animal will be exploited for commercial purposes once title passes. Under such circumstances, the Secretary has an affirmative duty to reject the potential adopter as unfit and to refuse to transfer title. While this may ultimately result in the destruction of the animals by the Secretary, that is an obligation imposed on the Secretary by Congress and it cannot be delegated absent legislative authorization.

This decision may result in fewer mass adoptions of wild horses by removing from the Secretary's "qualified" list those who expressly intend to commercially exploit the animals. However, if it does so, it will not defeat congressional intent to restore a "thriving natural ecological balance to the range, and protect the range from the deterioration associated with over population." That is so because the Secretary will continue to seek those "qualified" individuals who wish to adopt the animals for humane purposes.

It was clearly congressional intent that the "ecological balance" be achieved in such a way that the wild horses and burros are protected from commercial exploitation and slaughter. 16 U.S.C. § 1333. Congress perceived a need for the humane removal of some animals from the public lands in order to achieve and maintain a "thriving natural ecological balance on the public lands."

To achieve this delicate balance, the BLM under the enabling legislation, was authorized by the Secretary to adopt animals out to qualified applicants. Under the provisions of 43 C.F.R. § 4740.4–3 (1985), a BLM officer may allow volume adoption of horses by a single adopter *provided* the adopter is deemed capable of humanely caring for the animals. The BLM officer has the discretion to reduce or waive the adoption fee when he determines it is in the public interest to do so. If a BLM officer determines an animal is being commercially exploited or inhumanely treated the officer may take immediate repossession of the animal. 43 C.F.R. § 4740.40(e).

To the extent that placement is not possible, Congress has directed the Secretary to destroy excess animals in the most humane and cost efficient manner possible. The Secretary may not delegate or transfer this obligation to others through the placement of horses with unqualified persons in the adoption program.

Therefore, Plaintiffs' Motion for Summary Judgment is GRANTED. The Defendants' Motion for Summary Judgment is DENIED. The Defendants are hereby enjoined and restrained from transferring the titles of wild free-roaming horses and burros to individuals who have, prior to the expiration of the one year "probationary period" prescribed by 16 U.S.C. § 1333(c), expressed to the Secretary an intent, upon the granting of title, to use said animals for commercial purposes.

IT IS SO ORDERED.