Alfred HABERMAN, Robert Peterson and Gail Sohler, partners, doing business as A & B Horse Farms, a general partnership, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 664–88–C.

United States Claims Court.

Oct. 4, 1989.

Lawrence L. Piersol, Sioux Falls, S.D., for plaintiffs. Robert E. Hayes, Sioux Falls, S.D. and John R. Kabeiseman, Yankton, S.D., of counsel.

J. Keith Burt, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen and Mary Mitchelson, Washington, D.C., for defendant.

## OPINION AND ORDER

TURNER, Judge.

A & B Horse Farms (plaintiff) is a partnership formed for the purpose of adopting wild horses under the Wild Free–Roaming Horses and Burros Act, 16 U.S.C. §§ 1331–1340. Plaintiff holds a general power of attorney from approximately 150 individuals who sought to adopt horses under the Act pursuant to agreements with the Department of Interior, Bureau of Land Management.[1]

On October 21, 1986, A & B Horse Farms acquired approximately 600 horses and thereafter maintained those horses for one year under the terms of Private Maintenance and Care Agreements entered into between plaintiff's principals (the 150 adopters) and BLM.[2] At the end of one year, A & B Horse Farms contacted BLM officials regarding transfer of title to the horses as provided by 16 U.S.C. § 1333(c). In November 1987, BLM repossessed the subject horses and declined to transfer title of them to plaintiff after receiving information that A & B Horse Farms was adopting the horses with an intent to sell them for slaughter once title passed. Plaintiff now seeks to recover damages of $440,000.00 for the reasonable value of the care and maintenance of the horses or, alternatively,

the sum of $173,329.22 which represents the fair value of the horses, transportation costs, and attorneys fees.

Defendant filed a motion to dismiss on the ground that the Claims Court lacks jurisdiction to entertain any of plaintiff's six causes of action. For reasons stated below, it is concluded that plaintiff has failed to state a claim within this court's jurisdiction.

### I

BLM administers an Adopt-A-Horse program under 16 U.S.C. § 1333 for the purpose of controlling overpopulation of wild horses and burros living on the public lands. If an overpopulation problem exists and the Secretary of the Interior determines that there is a demand for adoption of wild horses and burros by qualified individuals then he is authorized to humanely capture and remove the necessary number of animals for private maintenance and care. Pursuant to this program, A & B Horse Farms obtained approximately 600 geldings ranging in age from 3 to 31 years.

As part of the adoption process, plaintiff's principals executed Private Maintenance and Care Agreements [3] under which each agreed to care for the horses for a period of at least one year during which time title to the horses remained in the federal government. After twelve months the authorized officer could issue a Certificate of Title if the adopter had complied with the terms of the agreement and if the officer determined that the animals covered by the agreement had received proper care and humane treatment. During the one year period, A & B Horse Farms contracted with various ranchers and horse breed-

---

1. The facts set forth in text are gleaned from the complaint and are taken as true for the purpose of ruling on defendant's motion to dismiss.

2. The complaint is not clear about the precise contractual arrangements between BLM and A & B Horse Farms (the partnership) and between BLM and each of the individual adopters. *See* Complaint, ¶¶ VII, X and XXXI, Exhibit A (¶ 3 & ¶ "OBTAINING TITLE") and Exhibit B (2d par.). Presumably each of the 150 adopters made application to BLM to adopt four wild horses, executed an Adopt–A–Horse Screening

Guide in the form of Exhibit A to the complaint and, prior to obtaining possession of the horses, entered a separate written agreement with BLM entitled Private Maintenance and Care Agreement. *Id.* No copy of a Private Maintenance and Care Agreement was submitted with the complaint or attached to any of the motion papers. Further, presumably, there was no direct express contractual relationship between A & B Horse Farms and BLM. *Id.*

3. See note 2 above.

ers in Nebraska to provide care for the wild horses obtained from BLM.

Before issuing titles, BLM requested that plaintiff assemble the horses in Yankton, South Dakota for a field examination to determine if they had received proper care and treatment as mandated by the Act. After conducting a field inspection, BLM officials concluded that the horses had received proper care and that the adopters had complied with all the terms set forth in the Private Maintenance and Care Agreement. The officials informed plaintiff that titles to the horses would be issued and mailed to the individual adopters. Thereafter plaintiff shipped six loads of horses to Montana leaving approximately ten horses behind in Yankton, South Dakota because it was unable to load them on available trucks.

BLM subsequently received information that A & B Horse Farms was adopting the horses with the intent to sell them for slaughter once title passed, conduct in direct contravention of the Act's requirements that adopters be "qualified individuals" who "can assure humane treatment and care." 16 U.S.C. § 1333(b)(2)(B). Accordingly, BLM officials confiscated the horses in Great Falls, Montana on November 10, 1987 and confiscated the remaining ten horses in Yankton, South Dakota on November 22, 1987. After plaintiff's demands for reimbursement were denied by BLM and the Office of the Solicitor, United States Department of Interior, it filed this action seeking relief.

## II

Plaintiff alleges six causes of action as grounds for relief. First, plaintiff alleges that BLM officials violated 16 U.S.C. § 1333(c) by failing to issue titles to the horses and that this provision is a money-mandating statute invoking the jurisdiction of the Claims Court. In its second and third claims plaintiff alleges that BLM breached both an express and an implied contract which required BLM to issue titles to the horses. Plaintiff's fourth claim is that BLM has been unjustly enriched by plaintiff's compliance with the Private

Maintenance and Care Agreement since ordinarily BLM contracts for the care of similar animals at the rate of $2.40 per head per day. Next, plaintiff alleges that BLM's confiscation of the horses constitutes a taking without due process of law. Finally, plaintiff alleges that the issuance of titles to other similarly situated parties denies plaintiff the equal protection of law. Defendant contends that the Claims Court lacks jurisdiction to entertain plaintiff's claims at this juncture.

## III

### A.  *Violation of 16 U.S.C. § 1333*

It is well established that the Tucker Act, 28 U.S.C. § 1491(a)(1), confers jurisdiction on the Claims Court to entertain claims against the United States for money whenever a statute, regulation of an executive department, or constitutional provision "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Testan,* 424 U.S. 392, 401–02, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976) (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). *See United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). A cause of action based on violation of a statute requires a plaintiff to point to a legislative provision that mandates the payment of money by the federal government.

■ Generally, this court has jurisdiction of cases based on a money-mandating statute only when the payment of "actual, presently due money damages" is the remedy sought. *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). In *Testan,* the Court held that the former ·Court of Claims lacked jurisdiction to issue a remand order to the Civil Service Commission because the claim did not involve presently due money damages even though the purpose of the remand order was to allow the Commission to create the entitlement to pay. *See Gentry v. United States,* 212 Ct.Cl. 1, 6 n. 1, 546 F.2d 343, 345 n. 1 (1976); *reh'g denied,* 212 Ct.Cl. 27,

551 F.2d 852 (1977). In *Gentry*, the Court of Claims had jurisdiction over the plaintiff's claim based on the Civil Service Retirement Act of 1930 because it stated a claim for money presently due and not requiring further action on anyone's part to create entitlement. The court stated, "This is exactly the kind of claim within our jurisdiction under *Testan.*" 212 Ct.Cl. at 7, 546 F.2d at 346.

■ In this case, plaintiff states a claim based on an alleged violation of 16 U.S.C. § 1333(c) which authorizes the Secretary of Interior to grant title to animals adopted under the Department's Adopt–A–Horse program. Plaintiff argues that this statute is money-mandating even absent an express provision regarding money damages because the statute can be interpreted broadly as mandating compensation. Specifically, the plaintiff claims that 16 U.S.C. § 1333(c) may be reasonably construed to mean that an adopter who fulfills the statutory requirements is entitled to compensation in the form of title to the adopted horses, or, if title is not conveyed, that the government must provide compensation in money payments.

It is concluded that this construction of 16 U.S.C. § 1333(c) is unreasonable and that the statutory provision is not money-mandating for purposes of Tucker Act jurisdiction. While § 1333(c) gives the Secretary authority to transfer title of adopted horses to private individuals who have complied with the terms of a Private Maintenance and Care Agreement, it by no means mandates that the Secretary automatically transfer title following a one year period. The regulations accompanying 16 U.S.C. § 1333(c) explain that the authorized officer may make available for private maintenance all excess wild horses or burros for which an adoption demand by qualified individuals exists. 43 CFR § 4750.1 (1988). In *Animal Protection Institute v. Hodel*, 671 F.Supp. 695 (D.Nev.1987), *aff'd*, 860 F.2d 920 (9th Cir.1988), the court held that the Secretary must reject a potential adop-

ter as unqualified and refuse to transfer title when it knows in advance that the potential adopter intends to commercially exploit adopted horses and burros after title is transferred.

Plaintiff's claim of violation of 16 U.S.C. § 1333(c) does not state a claim for money damages presently due and not requiring further action on anyone's part to create the entitlement thereto. *See Gentry*, 212 Ct.Cl. at 7, 546 F.2d at 346.

### B. *Breach of Express or Implied Contract*

Plaintiff alleges that by virtue of BLM's Adopt–A–Horse Screening Guide, it had an enforceable contract which was breached when BLM failed to issue titles to the horses.[4] Plaintiff also alleges that its compliance with BLM regulations created a contract implied in fact and in law whereby BLM was required to issue titles upon plaintiff's performance of the regulatory requirements.[5] Defendant contends that the Contract Disputes Act, 41 U.S.C. §§ 601–13, applies to this case and that plaintiff has failed to meet the jurisdictional requirements of that Act.

■ When the CDA applies, a claim exceeding $50,000 may be brought in the Claims Court only if it is certified and then presented for decision to a contracting officer. 41 U.S.C. § 605(a) and (c)(1). These requirements are jurisdictional prerequisites and a complaint must be dismissed if they have not been met. *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1339 (Fed.Cir.1983); *Acousti Engineering Co. v. United States*, 15 Cl.Ct. 698, 700 (1988).

■ Plaintiff agrees that the Contract Disputes Act applies to this case since it involves a contract for the disposal of personal property. *See* 41 U.S.C. § 602(a)(4). Plaintiff did submit a claim for reimbursement to BLM by means of a letter dated May 9, 1988 (although the letter appears to assert a Fifth Amendment taking claim and a wrongful conversion tort claim rather

---

**4.** See note 2 above.

**5.** "[A]s a general rule there can be no implied contract where there is an express contract be-

tween the parties covering the same subject." *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 673, 428 F.2d 1241, 1255 (1970).

than a contract claim) (Complaint, Exhibit B). BLM's response of June 16, 1988, for present purposes, may be viewed as the decision of a contracting officer (Complaint, Exhibit C). The claim submitted, however, was clearly not certified and for this reason alone the Claims Court must dismiss the express and implied contract counts. The fact that a contracting officer has rendered a decision on the merits of an uncertified claim is of no consequence since a contracting officer does not have authority to waive the certification requirement imposed by Congress. *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982). When a contractor is proceeding under the CDA and its case is dismissed for lack of jurisdiction, the proper course of action is for the contractor to properly certify the claim pursuant to 41 U.S.C. § 605 and resubmit it to the contracting officer. *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1340 (Fed. Cir.1983); *Skelly & Loy v. United States,* 231 Ct.Cl. 370, 377, 685 F.2d 414, 419 (1982).

In addressing defendant's motion to dismiss, the court accepts the parties' representations that any contract at issue here is subject to the CDA. On this basis it is concluded that plaintiff's second and third causes of action based on breach of an express or implied contract must be dismissed because the claims were not certified as required by the CDA. *See* 41 U.S.C. § 605(a) and (c)(1).

### C. *Quantum Meruit and Unjust Enrichment*

Plaintiff alleges that its care and maintenance of the horses for the one year period described in the Private Maintenance and Care Agreement unjustly enriched BLM and that it is entitled to recover therefore. Ordinarily, BLM contracts with private contractors for the care of similar animals at the rate of $2.40 per head per day. Plaintiff contends that it is entitled to recover a sum equal to the number of horses confiscated multiplied by $2.40 per horse for each day the horse was cared for by plaintiff.

The doctrine of unjust enrichment is analogous to the concept of quantum meruit; both refer to a class of obligations imposed by law for reasons dictated by justice and equity without regard to assent of the parties bound. In a situation where one party is unjustly enriched by benefiting from the labor and materials of another, the law implies a promise to pay a reasonable amount for the labor and materials even absent a specific contract to that effect. *See* Black's Law Dictionary 1119 (5th ed. 1979). It is well established, however, that the government cannot be sued on contract obligations implied-in-law. *United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 2968–69, 77 L.Ed.2d 580 (1983); *Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059–60 (1981); *People's Bank & Trust Co. v. United States,* 11 Cl.Ct. 554, 566 (1987). The government can only be liable to the extent that it has relinquished its sovereign immunity, and it has not done so with respect to contracts implied-in-law. *City of El Centro v. United States,* 16 Cl.Ct. 500, 505 (1989). For these reasons, plaintiff's fourth cause of action based on quantum meruit or unjust enrichment must be dismissed.

### D. *Taking Without Due Process of Law*

Plaintiff takes the position that it had a vested right to require issuance of title to the horses in this case because it had complied with applicable laws and regulations concerning the care and maintenance of the horses during the one year trial period. Plaintiff alleges that BLM's confiscation of the horses amounts to an unlawful taking of plaintiff's property *without due process of law.* Plaintiff stresses that it was given neither notice that the confiscations would occur nor an explanation of why the horses were confiscated.

As a general rule, a plaintiff cannot assert this court's jurisdiction on the basis of the due process clause of the Fifth Amendment since any claim for relief must be for money damages in order to be cognizable here. *J & L Janitorial Services, Inc. v. United States,* 231 Ct.Cl. 837 (1982); *Eastport S.S. Corp. v. United States,* 178

Ct.Cl. 599, 372 F.2d 1002 (1967). See Part III A above. The due process clause by itself does not obligate the federal government to pay money damages. *Montalvo v. United States*, 231 Ct.Cl. 980, 983 (1982). Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Claims Court does have jurisdiction over Fifth Amendment claims when a taking without just compensation is involved. *See Jarboe–Lackey Feedlots, Inc. v. United States*, 7 Cl.Ct. 329 (1985).

█ The Fifth Amendment to the United States Constitution provides: "No person shall ... be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." It is axiomatic that in order for a Fifth Amendment taking to occur there must be "private property." In this case the horses remained government property until title passed to the plaintiff. Since title never passed, there is no private property the deprivation of which could properly be asserted as the basis for a taking claim under the Fifth Amendment.

The regulations underlying 16 U.S.C. § 1333 explain when federal ownership of the wild horses and burros ceases. 43 CFR 4750.4–1(a) states: "Title to wild horses and burros covered by the agreement shall remain in the Federal Government for at least 1 year after the Private Maintenance and Care Agreement is executed and until a Certificate of Title is issued by the authorized officer." In addition, 43 CFR 4750.-5(c) states: "Effective the date of issuance of the Certificate of Title, Federal ownership of the wild horse or burro ceases and the animal loses its status as a wild horse or burro and is no longer under the protection of the Act or regulations under this title." It is clear from these regulations that title does not automatically vest (as plaintiff would suggest) after a potential adoptee demonstrates its ability to care for the horses during a one year period. Rather, one year of private maintenance and care is the minimum that the Secretary must require before it may issue title to a potential adoptee. If title to the horses had been issued to the plaintiff here then there would be private property upon which a cognizable claim for an unlawful taking could be based. Since title remained in the federal government, however, plaintiff's Fifth Amendment taking claim must be dismissed.

### E. Denial Of Equal Protection Of Law

█ Plaintiff's final cause of action is based on an equal protection argument. Plaintiff alleges that it was denied the equal protection of law because BLM issued titles under similar circumstances to parties who intended the same disposition of adopted horses as allegedly formed the basis for confiscation of the horses in this case.

Claims based on the equal protection clause simply do not fall within this court's jurisdiction. *J & L Janitorial Services, Inc. v. United States*, 231 Ct.Cl. 837 (1982); *Bounds v. United States*, 1 Cl.Ct. 215, aff'd, 723 F.2d 68 (Fed.Cir.1983). The Court of Claims in *J & L Janitorial Services* explained: "This court ... has no jurisdiction over claims based upon the due process and equal protection guarantees of the Fifth Amendment since these provisions do not obligate the federal government to pay money damages." 231 Ct.Cl. at 838. Likewise, the court in *Bounds* clearly stated: "Plaintiffs' fifth amendment claim is ... without merit. Insofar as they claim a denial of equal protection, our cases squarely hold that the equal protection clause of the fifth amendment does not form a basis for jurisdiction." 1 Cl.Ct. at 216. *See also Mack v. United States*, 225 Ct.Cl. 187, 635 F.2d 828 (1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981); *Carruth v. United States*, 224 Ct.Cl. 422, 627 F.2d 1068 (1980). Accordingly, plaintiff's equal protection claim must also be dismissed.

### IV

It is concluded that this court lacks jurisdiction over plaintiff's claims. Defendant's motion to dismiss filed June 15, 1989 is GRANTED. Judgment for defendant shall be entered accordingly.