EASTERN TRANS–WASTE
OF MARYLAND, INC.,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 91–1152 C.

United States Court of Federal Claims.

Nov. 24, 1992.

Peter Paul Mitrano, Fairfax Station, Va., for plaintiff.

Mark L. Sucher, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen and Sharon Y. Eubanks, Washington, D.C., for defendant.

OPINION AND ORDER

TURNER, Judge.

I

This opinion addresses defendant's motion filed July 8, 1992 to dismiss the complaint for lack of jurisdiction.

■ For purposes of considering a motion to dismiss under RUSCC 12(b)(1), the

court must usually accept as true the non-motioning party's allegations of fact.[1]

In this case, therefore, it is assumed that the Air Force, on November 29, 1990, let a contract for waste disposal and recycling services at Bolling Air Force Base to Charlie Solomon d/b/a Waste Recycling Systems. Later, Waste Recycling entered an agreement with the plaintiff, Eastern Trans–Waste of Maryland, Inc. Though the nature of this latter agreement is not explained in the complaint or elsewhere in the record, it is alleged that the agreement obligated Eastern to perform certain of the work for which Waste Recycling had contracted with the Air Force and that Eastern did perform some of this work. The contract was soon terminated for the default of Waste Recycling. The government has made no payments under the contract. Eastern alone brings this action against the defendant seeking payment for the waste disposal services Eastern provided at Bolling. Plaintiff asserts three grounds for relief: Eastern's Count I claims *quantum meruit* relief, while Counts II and III claim relief under the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1988).

Since the defendant's Rule 12(b)(1) motion challenges the sufficiency of the jurisdictional facts set forth in the complaint, it is important to understand the precise nature of the plaintiff's allegations. Portions of the complaint applicable to all three counts allege that pursuant to a "joint adventure" formed by the two companies after Waste Recycling entered the contract with the government, "the plaintiff performed certain work ... required by said contract for the defendant.... The defen-

dant ... knew and acquiesced to the plaintiff ... performing certain work required by said contract. The reasonable value of the work ... required by said contract is at least the sum of $98,117.09." Complaint at ¶¶ 6–9. Plainly, "said contract" is the one between Waste Recycling and the Air Force.

There is no explicit allegation of a contract between the Eastern and the government. In fact, Count I reflects the plaintiff's legal assumption that *quantum meruit* relief is available without even color of contract. In contrast, Counts II and III ask for relief under the CDA "[i]n the event it is determined that a contract existed between the plaintiff ... and the defendant...." Complaint at ¶ 15.

The plaintiff's indirect request that the court find a contract between Eastern and the government is based on the following two alleged premises: (1) that a joint venture was formed between the two companies and (2) that the government knowingly acquiesced in Eastern's performance of work at Bolling Air Force Base. Eastern's argument is that because Waste Recycling had a contract with the government and the two companies later formed a joint venture to execute the contract, and because the government knew Eastern was performing work required by the contract, a contract existed between Eastern and the government.

Defendant's motion to dismiss thus raises two similar questions. First, whether a contract claim may be based on a plaintiff's allegation of an agreement with a government contractor rather than with the government. Second, whether a *quantum me-*

---

1. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). This is the rule for simple attacks on the sufficiency of the jurisdictional facts alleged in the complaint. The instant case presents such a so-called *facial attack* on the complaint's sufficiency. But there are exceptions to the usual Rule 12(b)(1) requirement that the allegations of the complaint be accepted as true. Such exceptions, referred to under the collective rubric of *factual attacks,* exist in cases where a jurisdictional determination on the pleadings alone would be unfair. Such cases might arise where the merits of a case are inextricably interwoven with the facts necessary to establish jurisdiction, or where the

truth of the jurisdictional facts is disputed, or where only additional discovery can uncover necessary jurisdictional facts, or where the jurisdictional attack is based on matters outside the pleadings. Instructive discussions are found in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Reynolds v. Army and Air Force Exchange Service,* 846 F.2d 746 (Fed.Cir.1988); *Majd–Pour v. Georgiana Community Hospital, Inc.,* 724 F.2d 901 (11th Cir.1984); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727 (11th Cir.1982); and *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

*ruit* claim may be asserted against the United States without an allegation that a contract existed. As the analysis below shows, the answer to both questions is that contract claims against the government require an explicit allegation of a direct agreement with the government.

## II

▮ Eastern's complaint is inaccurate in suggesting that its agreement with Waste Recycling created a joint venture. Complaint at ¶ 6. In government contract law, a *joint venture* is a single entity, comprised of more than one individual or organization, which contracts with the government. *KDH Corp. v. United States*, 23 Cl.Ct. 34, 38 (1991); *Ward–Schmid Co. v. United States*, 18 Cl.Ct. 572, 575 (1989); *Pine Products Corp. v. United States*, 15 Cl.Ct. 11, 14 (1988). On the other hand, when two parties agree to perform jointly a contract which one has earlier secured with a third party like the government, the new party is called not a joint venturer, but a *subcontractor.*

Since the complaint alleges that the contract between Waste Recycling and the Air Force predates the agreement between Waste Recycling and Eastern, and since there is no allegation of any subsequent agreement between the government and the two companies, Eastern has, in legal effect, described itself as a subcontractor.

## III

The power of any court to address the merits of and enter judgment upon any claim against the United States requires both a grant of authority and a waiver of sovereign immunity by the government of the United States acting through Congress.[2]

Through the Tucker Act, Congress has granted this court jurisdiction to consider claims against the United States sounding in contract. 28 U.S.C. § 1491(a) (1988). The claim at bar sounds in contract, and therefore this court ordinarily would have subject-matter jurisdiction. *See Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 747 (Fed.Cir.1988); *Fikse & Co. v. United States*, 23 Cl.Ct. 200 (1991); *H. Landau & Co. v. United States*, 16 Cl.Ct. 35, 39–40 (1988), *vacated on other grounds*, 886 F.2d 322 (Fed.Cir.1989) (granting a merits dismissal, not a jurisdictional dismissal, when a contract was found not to exist); *Metzger, Shadyac & Schwartz v. United States*, 10 Cl.Ct. 107, 109 (1986). *Cf. Adam v. United States*, 26 Cl.Ct. 782, 785 (1992) (requiring only "colorable allegation" for Tucker Act jurisdiction without specific reference to contract claims).

▮ The court's power to grant relief in any public contract case is predicated on the government having entered a contract with the plaintiff. Without such predicate, a plaintiff's case will fall for failure to state a claim which a court is empowered to enforce against the government,[3] that is, it will fail on the merits. However, before the merits of the case can be reached, jurisdiction must be established. In this instance, a failure to allege a government contract means the court has no jurisdiction. *Reynolds*, 846 F.2d at 747; *cf. Adam*, 26 Cl.Ct. at 785.

▮ The right to seek and collect contract damages from the government is generally extended only to those who contract directly with the government. *United*

---

2. Such waivers of sovereign immunity are strictly construed. *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941); *United States v. Michel*, 282 U.S. 656, 659, 51 S.Ct. 284, 285, 75 L.Ed. 598 (1931). This decision rests on the doctrine of strict construction. However, argument that waivers of sovereign immunity should not necessarily be strictly construed can be found at *Miller v. United States*, 500 F.2d 1007, 1009 (2nd Cir.1974); *Panella v. United States*, 216 F.2d 622, 624 n. 3 (2nd Cir.1954) (citing *United States v. Shaw*, 309 U.S.

495, 501, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940) and *Federal Housing Administration v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)).

3. All courts considering government contract claims are bound in the same manner as the Court of Federal Claims to respect the limits Congress has set on the exposure of the United States under contract claims. *But see Chavez v. United States*, 18 Cl.Ct. 540, 547 (1989).

*States v. Blair,* 321 U.S. 730, 737, 64 S.Ct. 820, 823, 88 L.Ed. 1039 (1944) (citing *Merritt v. United States,* 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925) (opinion of Brandeis, J.)); *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1160–61 (Fed.Cir.1985); *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 814 (Fed.Cir.1984); *Severin v. United States,* 99 Ct.Cl. 435, 442 (1943), *cert. denied,* 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). There can be no direct action by a subcontractor unless there exists an explicit or implicit agreement between the subcontractor and the government.[4]

■ Even the government's knowledge and approval of the use of a subcontractor is not enough to authorize the subcontractor to recover directly from the United States. Evidence of the government's assent to the plaintiff's expectation of direct payment is required; government acquiescence in the plaintiff's performance of work is not enough to establish privity of contract. *Chesapeake & Potomac Telephone Co. v. United States,* 281 U.S. 385, 388, 50 S.Ct. 343, 344, 74 L.Ed. 921 (1930) (opinion of Holmes, J.) (refusing to find privity after plaintiff had performed extensive work for the government); *Johnson Controls,* 713 F.2d at 1548–50, 1552–53, 1556; *Nickel v. Pollia,* 179 F.2d 160 (10th Cir.1950); *H. Herfurth, Jr., Inc. v. United States,* 89 Ct.Cl. 122 (1939) (allowing no recovery to subcontractor under facts similar to the present case); *Chavez v. United States,* 18 Cl.Ct. 540, 545 (1989) (conferring a benefit on the government held not

enough to establish privity); *Wardroup & Assoc.,* 73–2 BCA ¶ 10,323, 1973 WL 1718 (1973).

In a facial attack on jurisdiction such as the one at bar, the allegations of the complaint, including allegations of the existence of a contract or the existence of privity, must be taken as true. Plaintiffs do not have to prove the merits of their case to establish jurisdiction. *Adam,* 26 Cl.Ct. at 785.

■ The existence of privity of contract is a merits question which cannot be addressed by a Rule 12(b)(1) motion attacking the sufficiency of the complaint. But the prior question of whether privity has been alleged is jurisdictional. Where the plaintiff has not alleged privity with the government, there is no jurisdiction to reach the merits. *Reynolds,* 846 F.2d at 747.

■ The plaintiff's key allegations of a subcontract with Waste Recycling and of government acquiescence to Eastern's work do not as a matter of law amount to the requisite allegation of a contract with the government. Based on the complaint at bar, the court cannot reach the merits. There is no subject matter jurisdiction.

### IV

The discussion above applies equally to all three counts of Eastern's complaint, including Count I seeking relief under the doctrine of *quantum meruit.*[5] But because the law surrounding implied contract claims like *quantum meruit* is somewhat

---

4. *Blair,* 321 U.S. at 737, 64 S.Ct. at 823; *Merritt,* 267 U.S. at 340–41, 45 S.Ct. at 279; *Balboa,* 775 F.2d at 1160–61; *Matter of General Services Administration,* 62 Comp.Gen. 633 (1983). In the absence of such an agreement, any claims by the subcontractor must be sponsored or certified by the prime contractor; such claims can never be brought in the subcontractor's own name. *United States v. Turner Construction Co.,* 827 F.2d 1554, 1558–61 (Fed.Cir.1987); *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813–14 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1551, 1556, 1557 (Fed.Cir.1983). A government contractor can recover only its own damages; however, the prime contractor's damages may include its liability to a subcontractor. *J.L. Simmons Co. v.*

*United States,* 158 Ct.Cl. 393, 397, 304 F.2d 886 (1962); *Severin,* 99 Ct.Cl. at 443; *Pan Arctic Corp. v. United States,* 8 Cl.Ct. 546, 548–49 (1985).

5. Implied contract claims such as *quantum meruit* are no less than other contract claims against the United States subject to the requirement that sovereign immunity be waived. All contract claims must allege privity of contract or some other source of permission to sue the government. *See El Centro v. United States,* 16 Cl.Ct. 500, 505 (1989), *rev'd on other grounds,* 922 F.2d 816 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *Haberman v. United States,* 18 Cl.Ct. 302, 307 (1989).

murky, some separate scrutiny is appropriate.

■ Federal courts considering implied contract claims against the government are generally said to be empowered by Congress to grant relief upon contracts *implied-in-fact*. Implied-in-fact government contracts are those which, though perhaps unwritten, stem from situations showing that the usual contract requirements of a mutually intended offer and acceptance, consideration, meeting of the minds, and definiteness all existed, and an additional showing that the binding of the United States was done by an authorized official. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir.1989); *California Sand & Gravel, Inc. v. United States*, 22 Cl.Ct. 19, 26–27 (1990), *aff'd* 937 F.2d 624 (Fed.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 934, 117 L.Ed.2d 105 (1992).

■ In none too stark contrast with implied-in-fact contracts, *implied-in-law* contracts are said to be obligations arising from situations where justice or equity demand some recovery regardless of the actual intent of the parties to be bound. Implied-in-law contract relief has been held to be beyond the Congressional grant of power to courts considering government contract cases. *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Lopez v. United States*, 858 F.2d 712, 714 (Fed.Cir.1988). Implied-in-law contract relief is inextricably linked to the doctrine of unjust enrichment. *Haberman v. United States*, 18 Cl.Ct. 302, 307 (1989).

There exists a swath of cases which together, usually under the standard of implied-in-fact contract, appear in practical effect to carve out an exception to the ban on implied-in-law relief against the government.[6] In most of these cases, all or part of an express contract was held to have been invalid, often because unauthorized by the government. *United States v. Amdahl Corp.*, 786 F.2d 387, 393–94 (Fed.Cir. 1986) (quoting *John Reiner & Co. v. United States*, 325 F.2d 438, 440, 163 Ct.Cl. 381 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), and other cases to the effect that contractors who know of contractual invalidity can still recover costs but not profit in *quantum meruit* if the invalidity is a close question); *Paisner*, 138 Ct.Cl. 420 (1957) (holding that contractor who was banned from bidding on government contracts but did so under another name could recover costs but not profits). Thus, the implied-in-fact contract cases are not universally premised on the existence in fact of a traditional, unblemished good faith contractual meeting of the minds. The doctrine of implied-in-fact contracts with the government is, like the doctrine of implied-in-law contracts, based at least in part on an equitable concept analogous to unjust enrichment.[7]

As currently mapped, the border between implied-in-law and implied-in-fact government contracts is not plain. *Chavez v. United States*, 18 Cl.Ct. 540, 546–47 (1989) (stating that the Federal Circuit in *Amdahl* granted implied-in-law contract relief while calling it implied-in-fact relief);

---

6. *E.g. Clark v. United States*, 95 U.S. 539, 24 L.Ed. 518 (1877); *United States v. Amdahl*, 786 F.2d 387 (Fed.Cir.1986); *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147 (Fed.Cir. 1983); *Yosemite Park and Curry Co. v. United States*, 582 F.2d 552, 217 Ct.Cl. 360 (1978); *Paisner v. United States*, 150 F.Supp. 835, 138 Ct.Cl. 420 (1957), *cert. denied*, 355 U.S. 941, 78 S.Ct. 429, 2 L.Ed.2d 421 (1958); *Wheeler's Case*, 5 Ct.Cl. 504 (1869); *Ocean Technology, Inc. v. United States*, 19 Cl.Ct. 288 (1990).

7. This conclusion is strengthened by the fact that the courts in cases like *Amdahl* and *Paisner*, where the plaintiffs have misbehaved in some way, are actually willing to abandon the ostensibly definite price terms of the implied-in-fact contract and award a lower recovery of costs to the plaintiff; only if the court sees no misbehavior on the part of the plaintiff is a true contract-type recovery, potentially including profits, possible under an implied-in-fact contract. *Amdahl*, 786 F.2d at 395. Of course, it logically follows that if the plaintiff's misbehavior rises above a threshold of "plain" or "palpable" illegality, no award at all will be made. *Warren Bros. Roads Co. v. United States*, 355 F.2d 612, 615, 173 Ct.Cl. 714 (1965) (discussing "palpable" illegality); *Reiner*, 325 F.2d at 440 (discussing "plain" illegality). Such analyses, resting on a subjective assessment of the plaintiff's culpability in determining the amount of recovery, show all the hallmarks of equity.

*H. Landau & Co. v. United States,* 16 Cl.Ct. 35, 39–40 (1988), *vacated on other grounds,* 886 F.2d 322 (Fed.Cir.1989) (declaring that "the distinction may seem more one of degree than kind"). The traditional maxim that Tucker Act courts have jurisdiction of implied-in-fact contracts but not of implied-in-law contracts is not particularly useful, and may be simply a set of new clothes letting the emperor avoid harsh results by doing equity in contracts cases. Under the current scheme, courts considering implied government contract cases are left to determine whether a plaintiff has acted badly enough that the award must be reduced or even refused. There is fundamental incompatibility between such a balancing test and the notion that waivers of sovereign immunity are to be strictly construed.

The analytically uncertain area of implied government contracts, like many others in the law dealing with a spectrum rather than a bright line, gives courts pause. However, though such spectrum tests are difficult or impossible to apply objectively to cases in the middle, they are easier at the ends. For this reason, the dissonance between the implied contract balancing test and the strict construction of sovereign immunity waivers need not be resolved in this particular case.

 Whether the contract is claimed to be expressed or implied, an agreement with the government must be alleged. Here, the plaintiff Eastern simply does not allege any representations by the Air Force or other facts which might tend to show that the government exhibited explicit or implicit intent to contract with Eastern for the work at Bolling Air Force Base. Privity was not alleged; no other waiver of sovereign immunity was alleged. As explained above, the government's knowledge of and acquiescence in the subcontract, even if true as alleged by Eastern, is not alone equivalent to an allegation of the necessary grant of permission to recover.

The plaintiff is mistaken in its apparent assumption that *quantum meruit* is an available remedy in the Court of Federal Claims without color of contract. *Quantum meruit* is a contract remedy. Taking all the plaintiff's allegations as true, his *quantum meruit* claim, like his other contract claims, fails of jurisdictional sufficiency.

### V

Defendant also mounts a jurisdictional challenge founded on the adequacy of the plaintiff's certification of the claim. However, because the court lacks subject-matter jurisdiction on other grounds, we have no occasion to address the defective certification argument. Under the facts alleged, this court has no jurisdiction because though the claims are in contract, the plaintiff has failed to allege any agreement, implied or otherwise, between the two parties. Therefore, the defendant's RUSCC 12(b)(1) motion to dismiss should be granted without prejudice.

### VI

Based on the foregoing, defendant's motion filed July 8, 1992 to dismiss the complaint for lack of jurisdiction is hereby GRANTED. Accordingly, judgment shall be entered dismissing the complaint. No costs.