**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**MIDSTATES OIL CORPORATION, Defendant.**

**Civ. A. No. 4068.**

United States District Court
N. D. Oklahoma.

June 12, 1957.

Stuart Rothman, Sol. of Labor, Washington, D. C., Earl Street, Regional Atty., and Harry Campbell, Jr., Dept. of Labor, Dallas, Tex., for plaintiff.

Charles Barnes, Jr., and Hulette F. Aby, Tulsa, Okl., for defendant.

SAVAGE, Chief Judge.

### Statement of the Case

This is an action to enjoin the defendant from violating the provisions of Section 15(a) (1), 15(a) (2) and 15(a)(5) of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The issue is whether certain of defendant's employees who are classified as and perform the duties of "scouts" are employed in a bona fide administrative capacity within the meaning of Section 13(a) (1) of the Act and the applicable regulations issued by the Administrator. To resolve the issue it is necessary only for the Court to determine whether said employees customarily and regularly exercise discretion and independent judgment in the performance of their duties. The plaintiff concedes that said employees satisfy the other requirements of the Administrator's definition of an "administrative employee". Likewise, the credibility of the witnesses is conceded by plaintiff.

The cause was tried and the Court, having considered the evidence, finds the

facts and states the conclusions of law as follows:

### Findings of Fact

1. The primary function of defendant's scouts is to gather, evaluate and report information about the activities of competing operators. The scouts seek knowledge of leasing activities, geophysical and geological surveys, drilling activities and general oil and gas operations. In some cases, such information is freely exchanged among operators. In others (such as the drilling of a "tight" well, hereinafter mentioned, or a geophysical survey) secrecy is sought and the scouts must learn what they can without any aid from the rival operator.

2. In the course of the performance of their work the scouts assemble, evaluate and verify information pertaining to the following matters, among others:

(a) The location of new drilling wells; formations encountered and the depths thereof; results of testing and coring and samples of cores; drilling times; mud weights; hydrostatic pressures and numerous other data of geological and engineering significance to the defendant. The scout must have special training or experience to perform this work and the other functions mentioned below.

(b) The following and reporting of oil and gas leasing activities to learn the name of the rival operator making such purchases, the price being paid for same and, of more importance, the reason why such leases are being purchased. In connection with this work, the scout conducts an investigation to ascertain what lands may be unleased in the area in order that the defendant might have the first opportunity to purchase the same.

(c) Obtaining geologic and engineering data on "tight" wells, including the objective depth of the well, perforation record, whether an electric log has been run, and the details of operations performed on the well. This assignment is, ordinarily, a difficult one and to obtain the needed information requires a considerable amount of ingenuity, experience and detective ability.

(d) The following and reporting of the activities of geophysical exploration crews, which includes the mapping of shot points and the interrogation of landowners and crew members in an effort to obtain any and all data which might be of value to the defendant in determining whether the crew has found a subsurface formation favorable for oil and gas.

3. Having assembled and correlated the information obtained as a result of the above-mentioned activities the scouts prepare weekly, written reports for defendant's President, Chief Geologist and Division Manager, setting out all the information they deem to be of value to their employer. The scouts endeavor to verify the accuracy of all information submitted and they use their own judgment about what to include in or exclude from the reports. Such reports represent the conclusions of the scouts based on consideration of the information obtained (after selecting and discarding numerous items of information) and are of great importance to the defendant. On the basis of scouting information supplied it the defendant has, since 1954, spent between a million and two million dollars to acquire new leases and, during the same period, it spent over three million dollars in developing leases so purchased.

4. The scouts conduct public relations work with landowners to create good will for the defendant company and the defendant's opportunity to buy into a leasing play quite often depends on the favorable impression created by the scouts.

5. In the performance of their duties in the field the scout ordinarily receives no instructions or orders from management nor is he told when or how to per-

form a job. All decisions relating to his work must be made by the scout and if one course of action fails to accomplish his mission he must determine on an alternative course to do the job.

6. In the performance of the duties described above the scouts customarily and regularly exercise discretion and independent judgment to a great degree. However, in addition to the functions listed, the scouts, from time to time, engage in other work which also requires the exercise of discretion and independent judgment. These jobs are:

(a) The examination of county records to determine the ownership of minerals in a tract of land and to ascertain whether such tract is leased or unleased.

(b) Negotiating for and purchasing oil and gas leases. In such instances the defendant informs the scout the top price it is willing to pay for the lease and the scout endeavors to purchase for a lesser price. If the purchase is consummated, the scout prepares a lease for execution by the mineral owners and draws a draft on his employer in the amount of the agreed price, which draft is paid by the defendant.

## Conclusions of Law

1. The Court has jurisdiction over the subject matter and the parties in this action.

█ 2. Defendant's employees who are subjects of this action, namely: Bob G. Walker, Ralph E. Dial and Hubert L. Meade, and those employees of the defendant who occupy the same positions (i. e. "scouts") and perform similar duties, are employed in a bona fide administrative capacity, within the meaning of Section 13(a)(1) of the Fair Labor Standards Act and the applicable regulations issued by the Administrator, Title 29, Code of Federal Regulations, Section 541.2, 29 U.S.C.A.Appendix.

3. Therefore, judgment is entered for the defendant.