**Philip Leroy ADAM, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 590–89C.**

United States Claims Court.

July 20, 1992.

Thomas A. Woodley, Washington, D.C., for plaintiffs. Gregory K. McGillivary, Washington, D.C., of counsel.

Shalom Brilliant, with whom were Asst. Attys. Gen. Stuart M. Gerson, David M. Cohen, and Jeanne E. Davidson, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

The pending cross-motions for summary judgment ask the court to decide whether the plaintiffs, Senior Border Patrol Agents employed by the Immigration and Naturalization Service ("INS"), are entitled to overtime benefits under the Fair Labor Standards Act ("FLSA"), Pub.L. No. 75–718, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201–219 (1988)). Defendant claims that the plaintiffs are exempt from the provisions of the FLSA because their duties are primarily "administrative." For the reasons stated below, the court finds that plaintiffs are entitled to overtime compensation. Accordingly, defendant's motion for summary judgment is denied, and the plaintiffs' motion for summary judgment on the issue of liability is granted.

## BACKGROUND

The FLSA covers all employees, federal and non-federal, who are not "exempt" from its provisions. Section 7 provides that employees who work more than 40 hours a week are entitled to compensation at one and one half times their regular rate of pay for each hour worked in excess of 40 hours. 29 U.S.C. § 207(a)(1). Section 13, however, provides that § 7 "will not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity...." 29 U.S.C. § 213(a)(1).

Philip Leroy Adam and approximately 668 other plaintiffs are Senior Border Patrol Agents GS–11 employed at various locations throughout the United States. Border patrol agents comprise the uniformed enforcement arm of the INS and are charged with the responsibility of enforcing the nation's immigration laws by policing the nation's borders to prevent and detect illegal entry of aliens into the country. Border patrol agents fall into four grade levels: GS–5, GS–7, GS–9, and GS–11. All of these agents have an occupation code of 1896. As of February 1991, there were 822 GS–11 (i.e., senior) border patrol agents, 2,798 GS–9 border patrol agents, 118 GS–7 border patrol agents, and 69 GS–5 border patrol agents.[1] Of these agents, only the senior agents at grade GS–11 are considered exempt from the FLSA. The agents at the other grades receive overtime pay. When it created the position of senior border patrol agent in 1987, the INS classified the position as exempt from the overtime provisions of the act on the theory that the GS–11s are employed in an "administrative" capacity.

The INS drafted a "prototype" position description ("PD") for the senior border patrol agent position in 1987. In 1990, after "on-site reviews" of the agents' work, the INS revised the PD to ensure that the description accurately reflected the actual duties of the position. The introduction to the 1987 PD states that "for the majority of the time, [the senior border patrol agent] performs intelligence, prosecutions, anti-smuggling, and/or other law enforcement work of comparable difficulty and complexity." The 1990 PD states that the agent "spends the majority of time performing prosecutions, anti-smuggling and other Border Patrol work of comparable difficulty. In the remaining time, the [agent] performs the Border Patrol Agent functions of line watch, sign cutting, farm and ranch check, traffic and transportation check, city patrol, and related duties."[2] The position is characterized as non-supervisory.

Defendant served interrogatories on the plaintiffs listing certain portions of the 1987 and 1990 PDs and asked the plaintiffs to confirm or deny that each portion accurately portrayed their actual job duties. Of the 621 plaintiffs who responded, 367 (59%) agreed that their job was properly described by the above-quoted portion from the 1990 PD. The percentage of plaintiffs responding "yes" to interrogatories relating to other portions of the PDs ranged from 19% to 86%. Because the court concludes below that the job described in the PD does not fit within the administrative exemption, it will not prejudice defendant for the court to assume that all the plaintiffs do the work as characterized therein. It is possible therefore to deal with the plaintiffs as a group.

The INS classifies GS–9 agents as non-exempt. Remarkably, neither party offers any meaningful comparison of this position with the senior agent position. Plaintiffs have, however, included an undated GS–9 position description as an exhibit to their proposed findings of fact. That PD provides, under the heading "Duties":

> Border Patrol Agents at this level independently perform the full range of patrol duties found at the employing sector or station to enforce the immigration and nationality laws, the corresponding criminal code, and to apprehend violators of

---

**1.** The INS intends that eventually 60% of border patrol agents GS–11 and below will be GS–11. Defendant's Statement of Genuine Issues No. 11 (Feb. 5, 1992).

**2.** The primary difference in the quoted portions of the two PDs is the omission from the 1990 PD of "intelligence" work from the list of duties that comprise the majority of the agents' time.

these and related laws within the jurisdiction of the Immigration and Naturalization Service.

... [P]erforms a variety of typical duties including sign cutting, farm and ranch check, traffic check, transportation check, city patrol, and international boundary security operations.

Comparing this PD to that of the GS-11s, it appears that the GS-9 agents are primarily field agents, while the GS-11s are field agents who also are required to perform investigatory duties and prepare cases for prosecution. The GS-9 agents' primary duties are those duties that the GS-11 agents perform "in the remaining time," i.e., the minority of their time.

At oral argument, counsel for defendant agreed that the GS-11s' duties are inclusive of all those performed by the GS-9s. Counsel stated that the GS-11s perform their duties under less supervision, exercise more judgment and discretion, and are required to plan and coordinate more. The investigations undertaken by the GS-11s are generally more complicated than those performed by the GS-9s.

The Office of Personnel Management ("OPM") has promulgated regulations dealing with the application of the FLSA to federal employees. With respect to the administrative exemption, those regulations provide:

An administrative employee is an advisor, assistance [sic], or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:

(a) The employee's primary duty consists of work that—

(1) Significantly affects the formulation or execution of management policies or programs; or

(2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or

(3) Involves substantial participation in the executive or administrative functions of a management official.

(b) The employee performs office or other predominantly nonmanual work which is—

(1) Intellectual and varied in nature; or

(2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.

(c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing normal day-to-day work.

(d) [not applicable to this case].

5 C.F.R. § 551.205 (1990).

## DISCUSSION

▮▮▮ The parties raise two preliminary issues. The first is, who has the burden of proof? Defendant claims that because the plaintiffs have the burden of proving that this court has jurisdiction, they must prove that they are entitled to overtime under the FLSA in order to perfect the requirements of the Tucker Act[3] waiver of sovereign immunity. This argument is flawed. By virtue of the Tucker Act, the United States consents to be sued by a plaintiff who makes a colorable allegation that a constitutional provision, statute, or regulation mandates compensation under the circumstances asserted. *See Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 606, 372 F.2d 1002, 1008 (1967). The FLSA is plainly a "money-mandating" statute within the contemplation of the Tucker Act. But if defendant's argument is correct, the plaintiffs would have to prove the merits of their case in order to establish jurisdiction. Half a century before the Tucker Act, the Supreme Court put that argument to rest. It taught that there is a distinction between the right to be heard to make a claim under a statute and the right to relief under the circumstances. A shortcoming in the latter proof "does not constitute an objection to jurisdiction." *United States v. Clarke*, 33 U.S. (8 Pet.) 436, 446, 8 L.Ed. 1001 (1834). If defendant was correct, the defect in the

3. 28 U.S.C. § 1491(a)(1) (1988).

plaintiffs' complaint would be a failure to state a claim upon which relief may be granted, not a lack of subject matter jurisdiction. Even OPM's predecessor, the Civil Service Commission, has instructed that: "[n]umerous judicial precedents have firmly established the principle[ ] that: ... [t]he burden of proof rests with the employer who asserts the exemption.... Thus, if there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be ruled nonexempt." Attachment to FPM Letter 551–7, at 11–12.

■ The next preliminary issue concerns the applicability of regulations, opinion letters, and other interpretations developed by the Department of Labor ("DOL") pursuant to its authority to implement the FLSA for private sector and non-federal employees. Defendant strenuously argues that these pronouncements by the Labor Department are not relevant to our inquiry here because the plaintiffs are federal employees, and the OPM has been charged with the responsibility of implementing the FLSA in the federal sector. The plaintiffs counter that the OPM is bound to administer the FLSA in a manner consistent with the Labor Department's administration of that statute. *See Lanehart v. Horner*, 818 F.2d 1574, 1578 (Fed.Cir.1987). To this defendant responds that unless plaintiffs are seeking the invalidation of the OPM regulations, then this court is bound to apply those regulations.

Implicit in defendant's argument is the suggestion that this court would be obligated to enforce regulations that might be contrary to law, unless they had first been overturned in a declaratory proceeding. Neither the court nor the plaintiffs question the rule-making authority of OPM. But the plaintiffs are entitled to make a claim under the statute. If we were to find that OPM's regulations are inconsistent with the FLSA, which they are not, we would be forbidden from enforcing those regulations so as to preclude an otherwise valid claim under the statute.

Even short of an outright conflict as between the two agencies, however, the DOL regulations can be used to shed light on the statute. Other than the statute itself, the OPM regulations are obviously the first point of reference that federal employers must use in implementing the FLSA. But in construing those regulations, the court is not barred, but rather is encouraged to consider the DOL's regulations and other interpretations of the statute. Although the OPM regulations are presumptively controlling, both sets of regulations are of value to the court. *See American Fed'n of Gov't Employees v. OPM*, 821 F.2d 761, 769–71 (D.C.Cir.1987); *Roney v. United States*, 790 F.Supp. 23, 25 (D.D.C.1992); *Amshey v. United States*, 26 Cl.Ct. 582, 590–591 (Cl.Ct.1992). In several instances, certain provisions of the OPM regulations mirror provisions of the Labor regulations. The Labor regulations provide more detailed definitions of those common terms. They are also of a much earlier vintage, and more courts have had the opportunity to construe them. Neither side has cited any OPM rulings or opinion letters, similar to those issued by DOL, which discuss the applicability of the administrative exemption to specific jobs. For these reasons, we believe the Labor Department materials provide guidance helpful to our construction of not only the FLSA, but also the OPM regulations.

■ In order for defendant to prevail, it must show that the plaintiffs' work meets all three of the criteria set out in 5 C.F.R. § 551.205, quoted above. On the other hand, the plaintiffs succeed if any one of the three criteria is not met. We find that defendant has not met its burden with respect to either of the first two criteria. The final one we do not address.

*Subsection (a)—Management requirement.*

The first element of the exemption test is met if defendant shows that:

The employee's primary duty consists of work that—

(1) Significantly affects the formulation or execution of management policies or programs; or

(2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or

(3) Involves substantial participation in the executive or administrative functions of a management official.

5 C.F.R. § 555.205(a). Because this subsection is written in the disjunctive, defendant need only show that one of the three paragraphs is met. Defendant contends that both paragraph (1) and paragraph (2) are descriptive of plaintiffs' work.

In order to assist agencies in implementing the regulations, the Civil Service Commission issued FPM Letter 551–7 (the "FPM Letter") on July 1, 1975. Although FPM Letters do not have the status of regulations, they aid the court as an interpretation of the regulations by the agency that promulgated them. As to paragraph (1), the FPM Letter explains what is meant by "formulation or execution of management policies or programs." It states:

> Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside the Federal Government, or making significant determinations in furtherance of the operation of programs and accomplishment of program objectives.

Attachment to FPM Letter 551–7, at 8.

Defendant admits that senior border patrol agents do not make policy. Instead, it contends that their work "involves obtaining compliance with [INS] policies by other individuals or organizations," and thus they "significantly affect the execution of management policies or programs." We disagree. The senior border patrol agents' PD provides that they "perform[ ] prosecutions, anti-smuggling and other Border Patrol work of comparable difficulty." Appendix to Defendant's Brief of Feb. 5, 1992, at 48. They also perform "the Border Patrol Agent functions of line watch, sign cutting, farm and ranch check, traffic and transportation check, city patrol, and related duties." *Id.* The job duties of a senior border patrol agent include "the full range of patrol duties found at the employing sector or station." *Id.* at 50. These tasks do not involve obtaining compliance with INS policies, but rather are routine law enforcement duties involved in obtaining compliance with the nation's immigration laws. If by enforcing the nation's immigration laws the agents are "significantly affecting" the execution of policy, then all border patrol agents should be exempt, and not just the senior agents. But defendant has pointed to no significant difference between the day-to-day activities of GS–9s and GS–11s that would warrant a finding that senior agents' work is different in this respect.

The problem with defendant's interpretation of this provision is that it equates "significantly affecting the execution of policy" with the mere "execution of policy." The fact that there is a distinction is made clear by the next paragraph from the FPM Letter:

> Administrative employees engaged in formulation and execution of management policies and programs typically perform one or more phases of program management (i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization or of other organizations subject to regulation or other controls). Some of these employees are classified in occupations that reflect these functions (e.g., program analyst) but many are classified in subject matter occupations.

Attachment to FPM Letter 551–7, at 8. Thus, employees covered by the administrative exemption perform management or staff functions and are not front-line production workers. Defendant does not argue that senior border patrol agents per-

form any of the functions listed in the FPM Letter. Rather, it cites plaintiffs' role in ensuring that the nation's immigration laws are observed as proof that plaintiffs significantly affect the execution of the INS's policy against illegal immigration.

Perhaps defendant's misapplication of this criterion can be traced to the difference between the terms "affect" and "effect." Presumably, every employee "effects" the execution of policy by carrying it out. But it is only those positions that "significantly affect," i.e., influence or change, the execution of policy that are exempt. Those are the positions whose incumbents, according to OPM, plan, develop, promote, coordinate, and/or supervise others. Front-line production-type employees do not fit within this category. Neither do the plaintiffs.

As to paragraph (2), defendant contends that the agents' work on prosecutions serves to "support" those who prosecute violators of the immigration laws.[4] Thus, according to defendant, the agent's primary duties "involve[ ] ... supporting services of substantial importance to the [INS]." Defendant relies on the PD which states that the agent:

> serves as senior Prosecutions Officer by reviewing, preparing, and presenting cases for administrative and criminal proceedings.... Evaluates each case for adequacy of information relative to the charge and action to be taken.... Ensures that all evidence requirements are fulfilled prior to trial and that the paperwork connected with each case is processed within timeframes required by law....

Serves as case agent interviewing defendants and material witnesses and obtaining sworn statements, data, and other information. Resolves disparate facts and produces concise, complete case reports.

Appendix to Defendant's Brief of Feb. 5, 1992, at 48. Through these actions, defendant claims, the plaintiffs provide support services to those in charge of prosecuting violators of the immigration laws. Defendant, however, misreads the term "support."

With respect to subsection (a), paragraph (2) of the regulation, the FPM Letter provides:

> *General management, business, or supporting services:* This element brings into the administrative category a wide variety of specialists who provide general management, business, or other supporting services *as distinguished from production functions.*

Attachment to FPM Letter 551–7, at 9 (italics supplied). From the italicized language it is clear that production workers are not to be classified as exempt. The only way defendant can show that the plaintiffs are covered by this paragraph is if the GS–9s are the "production" workers, while the plaintiffs provide support services. Plainly they do not. Prosecuting violators of the immigration laws directly involves performance of an INS mission and thus is a line function of INS. This is made clear by the FPM Letter, which recites that "general management, business, or other supporting services [are] distinguished from production functions." Attachment to FPM Letter 551–7, at 9.

---

**4.** In its reply brief, defendant argues that border patrol agents are not like most law enforcement employees because border patrol agents do not enforce

> "the nation's laws." They perform a specific law enforcement function that is ancillary to the policies and programs of their employer, *i.e.,* they support the execution of Federal immigration policy, by enforcing Federal immigration laws administered by INS. Thus, unlike law enforcement in general, border patrol agents' work is a support service in ways that are unique to specific policies and

programs administered by the agents' employer.

Defendant's Reply Brief of May 14, 1992, at 8. Following defendant's argument to its logical conclusion, all border patrol agents should be exempt. If the Border Patrol "supports" the INS by enforcing federal immigration policy, then all of its front line workers, GS–5 and higher, provide "supporting services." Such a result is untenable because as we discuss below, the regulations are clear that those workers who perform the "production" tasks of an agency or enterprise are to be considered nonexempt.

Plaintiffs' activities are clearly not what is contemplated in the FPM Letter as "support" services. The above-quoted portion of the Letter goes on to state:

The administrative employees in this category provide support to line managers by:

(1) Providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts;

(2) Assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management;

(3) Representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or

(4) Providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies.

Attachment to FPM Letter 551-7, at 9. The strained character of defendant's argument is apparent from an objective reading of this portion of the FPM letter. The obvious intent is to identify persons performing management or business functions. The listed activities all have a managerial flavor, including the examples of support services. None of them are performed by the plaintiffs.

By "performing prosecutions, anti-smuggling and other Border Patrol work of comparable difficulty," the plaintiffs are not providing "support to line managers." *Id.* INS is currently seeking to have 60% of its border patrol agents be GS–11s. Surely, that percentage of agents will not be performing management functions. Categorizing border agents as employees performing a management or business function would be a burlesque.

The United States District Court for the District of Columbia recently considered the question of the applicability of the administrative exemption to law enforcement officers in *Roney v. United States*, 790 F.Supp. 23 (D.D.C.1992). Roney was a GS–11 Deputy U.S. Marshal assigned to the D.C. District Court. Roney's job description stated that the marshal was to "apply investigative knowledges, skills, and abilities to conduct investigations of substantial difficulty concerning violations of laws, rules, and regulations enforced by the U.S. Marshal Service." *Roney*, at 24–25. The defendant in *Roney* made the identical argument it proffers here, that the marshal's duties significantly affected the execution of the policies and programs of the Marshals Service and the Department of Justice. The district court held that if the defendant's position were to be accepted, "the exemption would swallow the rule. In fact, it would be difficult to isolate a law enforcement officer or public safety official who would then be covered by the FLSA." *Id.* at 28.

In a case decided after the completion of the briefing in the present case, this court discussed whether law enforcement officers are administrative employees. In *Amshey v. United States*, 26 Cl.Ct. 582 (Cl.Ct. 1992), we held that employees of the Uniformed Division of the Secret Service are nonexempt for the purposes of the FLSA. We noted in *Amshey* that:

The distinction between the production of a law enforcement agency and its internal management is judicially recognized.

... A public employee whose primary law enforcement activity is the production of the agency, as opposed to the internal management of the agency, is nonexempt in the absence of a showing that management work constitutes more than 50 percent of the work in the position.

*Amshey*, at 603 (footnotes omitted) (citing *Roney v. United States*, 790 F.Supp. 23 (D.D.C.1992); *D'Camera v. District of Columbia*, 693 F.Supp. 1208, 1210–11 (D.D.C. 1988)).

Defendant does not attempt to distinguish *Roney*, nor has it cited any cases in which law enforcement officers have been found to be exempt. The two federal sector cases it cites with respect to the administrative exemption are distinguishable. In *Campbell v. United States Air Force*, 755

F.Supp. 893 (E.D.Cal.1990), a group of air traffic control specialists filed suit for overtime pay under the FLSA. The court noted that the plaintiffs provided a supporting service to the Air Force by ensuring that airplanes land and take off safely. *Campbell*, 755 F.Supp. at 896. The court found that the principal function of flying was distinct in kind from the support function of air traffic control. In the present case, the senior border patrol agents perform the end function itself. They are more comparable to pilots than air traffic controllers in that respect. In fact, pilots employed by the INS are classified as non-exempt and receive overtime compensation. Plaintiffs' Proposed Finding of Uncontroverted Fact ¶ 46.[5]

Defendant also cites *Hickman v. United States*, 10 Cl.Ct. 550 (1986), where we held that an electronics technician and a computer equipment analyst employed by the Navy were exempt from the FLSA. In *Hickman*, the court ruled that the data processing provided by the plaintiffs constituted a "supporting service" rather than a "production function." *Hickman*, 10 Cl.Ct. at 558 (appendix to the opinion). "Data processing itself has always been determined in any context to be a service and not a production of any item such as the hardware itself. The administrative employees in this category provide support to line managers by providing expert advice on specialized subject matter fields." *Id.* This is consistent with FPM Letter 551–7, at 9, which specifically cites data processing as an administrative support function. Because senior border patrol agents perform a production function and do not provide support to line managers, *Hickman* is inapposite.

Although defendant contends that DOL regulations are irrelevant to our analysis, it has cited four cases construing them. Two of the cases contain virtually identical facts.[6] In *Sprague v. United States*, 230 Ct.Cl. 492, 677 F.2d 865 (1982), and in *Dymond v. United States*, 670 F.2d 93 (8th Cir.1982), postal inspectors sought overtime pay under the FLSA. The Postal Service received a determination from the Wage and Labor Division of the DOL that postal inspectors were administrative employees. Both courts declined the plaintiffs' invitation to overturn the DOL's findings, citing the well-settled rule that the determination of an agency charged with the execution of a statute is entitled to great deference. *Sprague*, 230 Ct.Cl. at 498, 677 F.2d at 868; *Dymond*, 670 F.2d at 96 (both citing *Red Lion Broadcasting Co. v. Federal Communications Comm'n*, 395 U.S. 367, 381 & n. 9, 89 S.Ct. 1794, 1802 & n. 9, 23 L.Ed.2d 371 (1969)). Defendant argues that the job duties of postal inspectors and senior border patrol agents are sufficiently analogous for this court to apply the same reasoning as the *Sprague* and *Dymond* courts.

■ The *Sprague* court noted that the postal inspectors conducted "criminal, civil, and administrative investigations concerning the postal laws." *Sprague*, 230 Ct.Cl. at 493, 677 F.2d at 865. But neither the *Sprague* nor the *Dymond* court discussed the analysis used by DOL in reaching its determination that the postal inspectors were exempt. The court in *Sprague* simply quoted the DOL Wage and Hour Division's decision that: "[postal inspectors] appear to have as their primary duty the performance of work directly related to the general business operation of their employ-

---

5. The *Campbell* court also found that the work performed by the air traffic controllers was non-manual, as opposed to the decidedly manual duties of the senior border patrol agents. This element will be discussed in detail below.

6. The other two cases cited by defendant are *Hoyt v. General Insurance Company of America*, 249 F.2d 589 (9th Cir.1957), and *Mitchell v. Midstates Oil Corp.*, 151 F.Supp. 804 (N.D.Okla.1957). In *Hoyt*, the court found that an employee of an insurance company who inspected boilers and other machinery insured by his employer qualified for the administrative exemption. Similarly, the court in *Mitchell* found that an oil company's employees who "scouted" the activities of competing oil companies were administrative employees. It is unclear what proposition defendant expects us to glean from these decisions, but it is sufficient to say that they are not germane. In both cases, the employee was not engaged in the line function of the employer, nor did the employee perform any duties related to law enforcement.

er, including the exercise of discretion and judgment." *Id.* at 498, 677 F.2d at 868. That statement, standing alone, does not offer us a sufficient basis for applying *Sprague* to the present facts. The courts in both cases refused to examine the DOL's findings. In this case, we are asked to review a determination made not by OPM, the agency charged with administering the FLSA in the federal sector, but by the INS. Not only is no deference owed to the INS determination, but the INS has the burden of justifying its determination.

In any event, the court notes that the business of the Post Office is delivering the mail. An employee who works for the Post Office in a investigatory role would not appear to be performing a line function in that organization. On the other hand, the end function of the Border Patrol is carried out by the border patrol agents.

The INS has not requested a determination from OPM similar to the one issued by DOL in *Sprague* and *Dymond.* But the same agency, DOL's Wage and Labor Division, that was consulted in those two cases has issued opinion letters interpreting DOL criteria for the administrative exemption.[7] Title 29 C.F.R. § 541.2(a), promulgated by DOL, provides that the work of an administrative employee must be "directly related to management policies or general business operations." Title 5 C.F.R. § 551.205(a) of the OPM regulations contains similar elements in paragraphs (1) and (2).

In one such letter, dated July 27, 1989, the Secretary of Labor offered the following advice on the application of the Labor regulations to state and local government employees:

> In general, ... "administrative employee" refers to a person who is engaged in *staff* functions as opposed to the *line* functions of an employer.
>
> ... [W]here employees of a State [or] local government agency are performing activities that carry out the ongoing mission and day-to-day functions of that agency—rather than its management policies ...—such activities cannot be

viewed as the types of duties contemplated by the Regulations for exemption.

Dept. of Labor, Wage and Hour Div., Administrative Letter Ruling of July 27, 1989, *reprinted in* Ginsburg et al., *Fair Labor Standards Handbook*, App. III, at 250 (1989) [*hereinafter* Ltr. Rul. of {date}, *Handbook* App. III, at {page}]. In this case, senior border patrol agents "carry out the ongoing mission and day-to-day functions of" the INS.

Other opinion letters cited by plaintiffs discuss the application of the FLSA exemptions to law enforcement personnel. In a letter dated December 6, 1988, the Secretary advised that criminal investigators employed by a State Law Enforcement Division ("SLED") did not qualify as administrative employees. The criminal investigators "assist in the detection of crime and the enforcement of criminal laws." The letter provides: "Since SLED has criminal investigation as its function, the investigation activities performed by the criminal investigators would appear to be related more to the ongoing day-to-day 'production' operations of SLED than to management policies or 'general business operations.'" Ltr. Rul. of Dec. 6, 1988, *Handbook* App. III, at 251. The Administrator of the Wage and Hour Division (the "Administrator") used the same reasoning to opine that the positions of Sergeant Sheriff and District Attorney Investigator did not qualify for the administrative exemption. Seventy-five percent of the Sergeant Sheriff's time was spent on patrol work. The District Attorney Investigators conduct investigations and evaluate evidence for use in civil and criminal prosecutions. Ltr. Rul. of June 9, 1988, *Handbook* App. III, at 218–19.

Of the opinion letters cited by plaintiffs, one dated July 8, 1988, is the most analogous to our situation. In that letter, the Administrator considered the applicability of the administrative exemption to special agents employed by the Division of Criminal Investigation of a state Department of

---

7. This is the division that promulgated the Labor Department regulations defining the admin-istrative exemption. *See* 29 C.F.R. §§ 541.2, 541.201–215.

Public Safety. The letter describes the special agents' position as follows:

> The special agents are responsible for all aspects of the investigations of major crimes, such as narcotics and drug enforcement, murder, and armed robbery. Around 90 percent of the time they are in complete charge of the investigations, and the remainder of the time they assist, when requested to do so by other police jurisdictions, in conducting investigations initiated by other police departments in the State. They apprehend and interrogate criminals and suspects, interview witnesses, and operate under cover when they determine that it is appropriate to do so. They determine, in coordination with attorneys who prosecute the cases, whether to file criminal charges. They are authorized, of their own volition, to drop charges for lack of evidence. They set their own hours of work, and receive only minimal direction from their superiors. They must have five years of criminal law enforcement experience and a baccalaureate degree to qualify for the position of special agent.

Ltr. Rul. of July 8, 1988, *Handbook* App. III, at 220. The letter goes on to explain that because the business of the Division is criminal investigation, the special agents perform a production rather than "supporting" function within the Division.

The similarities between the special agents' work and that of the senior border patrol agents are striking. Both types of agent conduct investigations and prosecutions, as well as apprehend criminals. Both decide whether to prosecute certain cases.

We hold that the plaintiffs' work neither "significantly affects" the execution of INS policy nor "involves general management or business functions or supporting services of substantial importance to the [INS]." 5 C.F.R. 551.205(a)(1), (2). Thus, subsection (a) of the OPM regulations is not met.

*Subsection (b)—Non-manual work requirement.*

The next element of exemption requires defendant to show that:

> The employee performs office or other predominately nonmanual work which is—
>
> (1) Intellectual and varied in nature; or
> (2) Of a specialized or technical nature that requires considerable special training, experience and knowledge.

At the outset, plaintiffs' work must be "office or other predominately nonmanual work." The FPM Letter does not further explain the phrase.

The parties agree that senior border patrol agents spend a significant portion of their time in the field and no more than a third of their time doing paperwork in the office. The agents wear uniforms and black work boots. The tools of their trade include a handgun, a baton, night-vision goggles, and binoculars. The *"Physical Demands"* factor of the 1990 GS–11 PD states that: "Work requires frequent and recurring walking and running over rough terrain, stooping, bending, crawling in restricted areas such as culverts, climbing fences and freight car ladders, and protecting one's self and others from physical attacks. The Agent also lifts and carries moderately heavy objects occasionally." Appendix to Defendant's Brief of Feb. 5, 1992, at 52. For the factor *"Work Environment,"* the PD states:

> Work environment involves exposure to dangerous situations such as operating automobiles in high speed pursuits, boarding moving trains and vessels, and physical threat while detaining and arresting illegal aliens, smugglers, and other criminal elements. May be required to work long and irregular hours, on weekends, and at night. Assignments are subject to change without advance notice.

*Id.* at 53.

The level of physical effort required in the environment described plainly cannot be characterized as "office or other predominately nonmanual work." A dictionary definition of "manual" is, "requiring or using physical skill and energy." *Webster's Ninth New Collegiate Dictionary* (1986). Non-manual work, therefore, would not call for significant use of physi-

cal skill or energy. Certainly, the agents' job duties do not fit that definition.

The U.S. Marshal position described in *Roney v. United States*, 790 F.Supp. 23 (D.D.C.1992), discussed *supra*, required a similar degree of physical effort. The "Physical Demands" factor of the PD required "physical strength and stamina to perform such activities as long periods of surveillance, pursuing and restraining suspects, carrying heavy equipment ... considerable physical exertion, such as running, stooping, bending, climbing, lifting and carrying heavy objects." *Id.* at 25 (alteration in original). "Work Environment" was described as "indoors and outdoors in a variety of environments, including a wide variety of potentially dangerous and stressful situations. Incumbent may be subject to physical attack, including the use of lethal weapons." *Id.* The *Roney* court found that the "significant amount of manual work" required of the U.S. Marshals distinguished that case from *Campbell*, 755 F.Supp. at 896, which held that air traffic controllers performed technical and predominately non-manual work. *Roney*, at 28.

The DOL regulations also require that the work performed by an administrative employee be "office or non-manual work." 29 C.F.R. § 541.2(a)(1) (1991). Other DOL regulations provide the following guidance as to what is "nonmanual work":

(a) The requirement that the work performed by an exempt administrative employee must be office work or nonmanual work restricts the exemption to "white-collar" employees who meet the tests....

(b) ... if the employee performs so much manual work (other than office work) that he cannot be said to be basically a "white-collar" employee he does not qualify for exemption as a bona fide administrative employee, even if the manual work he performs is directly and closely related to the work requiring the

exercise of discretion and independent judgment. Thus, it is obvious that employees who spend most of their time in using tools, instruments, machinery, or other equipment, or in performing repetitive operations with their hands, no matter how much skill is required, would not be bona fide administrative employees....

29 C.F.R. § 541.203 (1991). Plaintiffs are clearly not "white-collar" office workers.[8]

Defendant responds that "predominately nonmanual work" should not be viewed in isolation, but rather in conjunction with paragraphs (1) or (2) of the subsection. It argues that the plaintiffs perform work which is intellectual and varied in nature, and that we should take that into account when we determine whether the work is predominately non-manual. To support this argument, defendant states: "In FPM Letter 551–7, OPM has defined nonmanual work of an 'intellectual' nature, within the meaning of 5 C.F.R. § 551.205(b)(1), as: 'Work requiring general intellectual abilities....'" Defendant's Brief of Feb. 5, 1992, at 10. However, the portion of the FPM Letter quoted by defendant does not actually define non-manual work of an intellectual nature. The paragraph is simply entitled "Work of an intellectual nature." Appendix to Defendant's Brief of Feb. 5, 1992, at 13. It does not provide any guidance in determining whether the work is manual or not. Such a determination must be made separately.

The PD states that the plaintiffs "spend[ ] the majority of the time performing prosecutions, anti-smuggling and other Border Patrol work of comparable difficulty." Nowhere does defendant define the level of physical exertion required to perform these functions. A showing that these functions are non-manual is essential to an exemption. These activities, however, are not of the type ordinarily associated with a desk-bound employee. By de-

---

**8.** An earlier version of the FPM Letter, 551–1, issued May 15, 1974, provided that: "[a]dministrative occupations are occupations ... that require the kind of knowledge, evaluation judgment and breadth of outlook expected of com-

petent college graduates." Attachment 2 to FPM Letter 551–1, at 4. The court notes that border patrol agents are not required to have college degrees.

fendant's analysis, "Dirty Harry" performs predominately non-manual work. It is sufficient to say that as to subsection (b), defendant has not met its burden of proving that the plaintiffs perform office or other predominately non-manual work. It is therefore unnecessary. to determine whether plaintiffs' work is intellectual and varied, or specialized and technical.

In the final analysis, the sophistical nature of defendant's reasoning is readily apparent from an objective reading of the opening words of the controlling regulation. Although it was appropriate for the parties to focus on the relevant detailed criteria developed by OPM, those criteria ultimately are descriptive of a worker who is "an advisor, [assistant], or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:...." 5 C.F.R. § 551.-205. To come to the conclusion that plaintiffs are advisors, assistants, or representatives of management, or specialists in a management, business or service supporting management or business requires a suspension of common sense. It becomes obvious that defendant's argument is drawn from isolated portions of the FPM Letter, viewed out of context. The court concludes that plaintiffs' job duties do not fall within either subsections (a) or (b) as required by the OPM regulations governing the administrative exemption.

## CONCLUSION

The defendant has failed to prove that the plaintiffs are administrative employees exempt from the FLSA overtime provisions. Plaintiffs' motion for partial summary judgment on the issue of liability is granted. Defendant's motion for summary judgment is denied. The parties are directed to submit a joint status report by August 24, 1992, proposing dates for resolution of the issue of damages.

It is so ORDERED.

