Robert L. **FERRELL,** Charles N. McCallum, Jr., Floyd K. Moates, Carlos J. Oliva, David Seibles, and Warren Young, Plaintiffs,

v.

**GWINNETT COUNTY BOARD OF EDUCATION** and Gwinnett County School District a/k/a Gwinnett County Public Schools, Defendants.

Civil Action No. 1:05–cv–2047–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 30, 2007.

Joseph A. Fried, Marla Michelle Eastwood, Henry Spiegel Fried & Milling, Atlanta, GA, for Plaintiffs.

Michael Douglas Kaufman, Ashley C. Adams, Robert Catron Stevens, Troutman Sanders, Atlanta, GA, E.L. Victoria Sweeny, Elizabeth Ann Fisher Kinsinger, Thompson & Sweeny, Lawrenceville, GA, for Defendants.

## *ORDER*

BATTEN, District Judge.

Plaintiffs are current and former School Resource Officers ("SROs") in the Gwinnett County School System who claim that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), by failing to pay them overtime compensation. During the relevant time period, Defendants classified Plaintiffs as exempt from the overtime pay requirements of the FLSA.[1] Defendants argue

---

1. Defendants have subsequently reclassified Plaintiffs, and they are no longer being treated as FLSA-exempt.

that the type of work Plaintiffs perform falls within the administrative exemption to the overtime requirements set forth in section 213(a) of the FLSA. *See* 29 U.S.C. § 213(a)(1).

On March 13, 2007, the Court heard oral argument on the parties' cross-motions for summary judgment. After carefully considering the record, the relevant legal authorities, and the arguments of counsel, the Court denied Plaintiffs' motion. Additionally, the Court granted the portion of Defendants' motion that addressed the issue of willfulness, finding that Defendants did not willfully violate the FLSA.[2] The Court took the remainder of Defendants' motion under advisement.

For the reasons that follow, the Court now grants the remainder of Defendants' motion for summary judgment.

## I. Facts

The Gwinnett County School System is the largest school system in Georgia, employing approximately 24,000 employees and educating approximately 150,000 students each year. The School System's 106 schools are divided into groups according to geographic boundaries, which are referred to as "clusters." Each cluster consists of one high school and approximately four to six middle and elementary schools that feed into the high school.

The School System's Department of Safety and Security is charged with providing safety and security to the employees, students, and property within the School System. Instead of relying exclusively on the local police departments to provide safety and security to the schools, the School System established the SRO program in 1994. SROs are sworn police officers who are charged with proactively preventing and responding to safety and security problems within the School System.

The School System considers only those individuals with expertise in the area of safety and security for the position of SRO, requiring at least ten years of law enforcement experience and a college degree.[3] SROs are required to maintain state police certification and firearms proficiency. SROs wear a police uniform with a standard police duty belt complete with handcuffs and an exposed firearm.

The School System also pays a premium for the SROs' level of expertise, compensating them at a salary that is approximately ten thousand dollars or more per year above the standard salary for a police officer with comparable experience.

As an SRO, each Plaintiff was assigned to a cluster of schools for which he was solely responsible. The parties agree that, within their respective clusters, Plaintiffs' most important duty was to provide for the safety and security of the students, employees, and property so that the School System could carry out its purpose of educating students. Indeed, Plaintiffs' primary function, as set forth in their job description, was to "assist the school ad-

2. Plaintiffs filed their complaint on August 5, 2005, seeking to recover overtime compensation from August 2002 through July 2005. However, because the Court has concluded that Defendants did not willfully violate the FLSA, Plaintiffs' claims are governed by a two-year statute of limitations. *See* 29 U.S.C. § 255(a). Therefore, the relevant time period for which Plaintiffs may seek to recover overtime compensation is from August 2003 through July 2005. Because Plaintiff Floyd K. Moates was no longer employed in the relevant position after June 2003, he seeks to recover overtime compensation for a period that is outside of the statute of limitations. Accordingly, the Court's ruling on the issue of willfulness effectively dismisses Moates' claim.

3. For example, Plaintiff Keinard has a law degree and Plaintiff Wolfe was the Assistant Chief of the Norcross Police Department.

ministration and staff in providing a safe and secure environment for students by proactively planning to prevent safety and security problems and by responding immediately to deal with any disruption or criminal activity." As Plaintiffs testified, they were responsible for doing whatever it took to ensure the safety and security of their clusters.

Plaintiffs assert that they spent 85–95% of their time performing duties that can be classified as "patrol officer" and "crime prevention" duties and that the remainder of their time was spent performing other related duties. Defendants dispute Plaintiffs' characterization of their duties as being "patrol officer" and "crime prevention" in nature. Defendants also dispute the amount of time that Plaintiffs spent performing their various duties.[4] Notwithstanding these differences, the parties agree that the substance of Plaintiffs' duties included:

- Providing advice to and answering questions posed by administrators and faculty regarding safety and security matters, such as traffic flow, emergency preparedness, and evacuation procedures;

- Responding to dispatched calls, making arrests, writing reports regarding incidents and arrests, and reporting certain matters to the local district attorney for prosecution;

- Patrolling the schools' halls and grounds in order to detect and deter criminal activity, and patrolling to detect safety and security problems, such as lighting issues, landscaping problems, and areas where video surveillance would reduce or eliminate safety and security issues;

- Providing training to faculty, administrators, and parent groups regarding safety issues, such as personal safety, gun safety, and gang awareness;

- Preparing for and teaching classes to students on matters such as personal safety, bus safety, drugs and alcohol, and driving laws;

- Participating in security surveys and safety drills, such as fire and lockdown drills;

- Assisting schools with safety checklists;

- Participating in staff orientation;

- Coordinating security for extracurricular events;

- Conducting investigations, including interviewing witnesses, interrogating suspects, collecting evidence, and maintaining case files;

- Acting as liaisons between the School System and law enforcement agencies, such as the Department of Family and Children Services and local police departments; and

- Building relationships with students and the community, including parent groups and other government agencies, such as the Department of Transportation.

In performing these duties, Plaintiffs were relatively free from supervision. Plaintiffs were responsible for planning their day, and unless called to the scene of an emergency, were not required to be in any particular location at any particular time. Likewise, Plaintiffs were not required to consult their supervisors or obtain approval before performing any particular duty or implementing their decisions. For example, in conducting investigations, Plaintiffs had the authority to decide whom to interview, what di-

---

4. The Court is mindful of its duty at the summary judgment stage to resolve these factual disputes in the light most favorable to Plain-   tiffs and will do so in analyzing the applicability of the administrative exemption.

rection an investigation would take, whether to charge an individual with a crime, and whether to refer an individual for prosecution. However, SROs are not supervisors of any other employees in their cluster, nor are they involved in the allocation of resources or personnel.

Each Plaintiff maintained an office at a school in his cluster and spent a portion of his day in his office or the offices and classrooms of faculty and staff, completing paperwork, working on his computer, making telephone calls, conducting interviews, holding meetings, and making presentations. Although Plaintiffs had offices, they were expected to spend a majority of their time out of the office performing other duties. Plaintiffs were also required to travel to other schools within their clusters and, along with other administrators, spend time in the halls or common areas before and after school, during lunch, and in between classes.

The parties are in disagreement as to whether the job of an SRO is as physically demanding as that of a beat police officer. However, Plaintiffs testified that while they were periodically called upon to break up fights between students, teachers and administrators broke up more fights than they did; they were prohibited from engaging in vehicle chases and rarely engaged in foot chases; and most Plaintiffs never pulled their guns.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that

burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

### B. Analysis

The FLSA establishes minimum labor standards to eradicate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute was designed to "aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). A cornerstone of the FLSA is the requirement to pay employees "engaged in commerce or in the production of commerce" overtime when they work more than forty hours in a week. 29 U.S.C. § 207(a)(1).

There are, however, exemptions from the overtime pay requirement that may apply depending upon the type of work

performed by the employee. Of relevance in this case, the overtime provisions of the FLSA do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity" as defined by regulations promulgated by the Secretary of Labor. 29 U.S.C. § 213(a)(1).

■ As noted earlier, Defendants argue that Plaintiffs fall within the administrative exemption. For Defendants to prevail, they must prove the applicability of the exemption by "clear and affirmative evidence." *Birdwell v. City of Gadsden,* 970 F.2d 802, 805 (11th Cir.1992). Additionally, the Court must narrowly construe the exemption against the employer. *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta,* 920 F.2d 800, 804 (11th Cir.1991).

With these principles in mind, the Court now addresses whether Defendants have carried their burden to prove the applicability of the administrative exemption.

Pursuant to 29 C.F.R. § 541.200, the term "employee employed in a bona fide administrative capacity" is defined as any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week ... exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

It is undisputed that Plaintiffs were paid on a salary basis of not less than $455 per week. Thus, the dispute between the par-ties is whether Plaintiffs' meet the second and third elements of the exemption.[5]

### 1. Whether Plaintiffs' Primary Duty is the Performance of Office or Non–Manual Work Directly Related to the Management or General Business Operations of the Employer

#### (a) Meaning of Primary Duty

The regulations implementing the FLSA define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. A "determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* Factors to consider include: (1) the importance of the employee's primary duty compared with other duties; (2) the amount of time the employee spends on the primary duty; (3) the employee's freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the other duties performed by the employee. *Id.*

#### (b) Office or Non–Manual Work

■ First, the Court must examine whether Plaintiffs' primary duty involves office or non-manual work. The Court rejects Defendants' argument that Plaintiffs' were primarily engaged in office work. Although Plaintiffs spent some time working in their offices or other offices, a substantial portion of their work consisted of patrolling the halls and performing other duties that cannot be fairly characterized as office work. Thus, viewing the facts in the light most favorable to Plaintiffs, the Court is not convinced that

---

5. The Court notes that there are no reported cases addressing whether SROs are exempt employees under the FLSA.

Plaintiffs were primarily engaged in office work.

The Court finds, however, that Defendants have shown by clear and affirmative evidence that Plaintiffs' primary duty involved non-manual work. As explained more fully below, the vast majority of Plaintiffs' duties did not require the physical strength or activity that is characteristic of what courts ordinarily deem "manual" work.

■ Plaintiffs argue that 85–95% of their time was spent performing law enforcement duties and urge that such duties constitute manual work. As an initial matter, the Court agrees with other courts that have concluded that time is only one factor to consider in the primary duty analysis. *See* 29 C.F.R. § 541.700; *Bosch v. Title Max, Inc.,* No. 03–AR–0463–S, 2005 WL 357411, *5, 2005 U.S. Dist. LEXIS 5034, at *16 (N.D. Ala. Feb. 7, 2005); *Moore v. Tractor Supply Co.,* 352 F.Supp.2d 1268, 1273–79 (S.D.Fla.2004); *Johnson v. Home Team Prods., Inc.,* No. 03–2775, 2004 WL 1586552, *9, 2004 U.S. Dist. LEXIS 13251, at *28 (E.D.La. July 15, 2004). In this case, the more appropriate inquiry is to examine Plaintiffs' primary value to the School System. *See Dalheim v. KDFW–TV,* 918 F.2d 1220, 1227 (5th Cir.1990); *Bosch,* 2005 WL 357411, *5, 2005 U.S. Dist. LEXIS 5034, at *16; *Moore,* 352 F.Supp.2d at 1273–1279.

When viewed in this way, it becomes evident that the primary and most important function of an SRO is to provide for the safety and security of the people and property in their clusters. In doing so, an SRO performs the hybrid function of an in-house law enforcement officer with certain quasi-administrative responsibilities. As such, many of an SRO's duties do not constitute manual work.

For example, it is undisputed that Plaintiffs participated in school security surveys; assisted with safety checklists; answered questions regarding safety and crime prevention; taught classes to students on issues such as safety, drugs, and gangs; and participated in staff orientation. Although Plaintiffs may not have spent a majority of their time on such matters, these duties are not typically performed by rank and file police officers, and they illustrate the unique value and function that Plaintiffs provided to the School System. In this regard, it is also significant that Defendants require SROs to have a high level of experience and education, they are compensated at a significantly higher amount than rank and file police officers, and they are expected to perform their duties without direct supervision.

Consequently, in considering the "emphasis on the character of the employee's job as a whole," the primary value of Plaintiffs to the School System was their ability to provide safety and security to the people and property in their clusters, not just their ability to perform conventional law enforcement functions that may traditionally involve manual work. If the School System placed a primary value solely on the duties that a rank and file police officer performs, it presumably would have relied upon the local police department at a much lower cost.

Moreover, even if the Court were to focus strictly on the amount of time Plaintiffs spent performing law enforcement duties, they still would not prevail on the manual/non-manual work issue. Plaintiffs cite *Adam v. U.S.,* 26 Cl.Ct. 782 (1992), as support for the proposition that the primary duty of public safety employees such as police officers often involves manual work. However, *Adam* is distinguishable. In that case, the plaintiffs were border patrol agents whose primary duty was manual "production" work of the Border Patrol Agency, including frequent and re-

curring walking and running over rough terrain, stooping, bending, crawling in restricted areas such as culverts, climbing fences and freight car ladders, and protecting themselves and others from physical attacks. *Id.* at 792–93.

The primary duty of the employees at issue in *Adam* is markedly different from Plaintiffs' primary duty here. Plaintiffs label their primary duties as falling under the rubric of law enforcement and claim that they spent 85–95% of their time performing such work. However, merely characterizing Plaintiffs' primary duty as law enforcement does not resolve the question of whether that duty involved manual work.

Upon closer examination of the duties that Plaintiffs claim they spent the majority of their time performing, it becomes apparent that the bulk of them involved non-manual work. For example, Plaintiffs interacted with school administrators, teachers, and students; answered questions posed by school administrators related to safety and security issues; wrote reports; testified at hearings or in court; conducted investigations; surveyed school grounds for safety or security problems; and patrolled the hallways.

As other courts have recognized, these types of duties do not constitute manual work. *See Schaefer v. Ind. Mich. Power Co.,* 358 F.3d 394, 401–02 (6th Cir.2004) ("inspection tasks" are non-manual); *Adams v. United States,* 27 Fed.Cl. 5, 16–19 (1992) (manual work is work involving use of tools, instruments, machinery, or other equipment or the performance of repetitious operations with one's hands; independent investigative work is intellectual, rather than manual work); *White v. All Am. Cable & Radio,* 656 F.Supp. 1168, 1170 (D.P.R.1987) ("Making security inspections or performing other field work ... [is] clearly nonmanual in nature"); *Adam,* 26 Cl.Ct. at 782 (manual work is

work requiring "significant use of physical skill or energy").

To be sure, Plaintiffs did perform some manual work such as making arrests and breaking up fights. However, Plaintiffs testified that although they were at times called upon to break up fights between students, teachers and administrators broke up more fights than they did; they were prohibited from engaging in vehicle chases and rarely engaged in foot chases; and most Plaintiffs never pulled their guns. Accordingly, unlike a rank and file police officer, Plaintiffs' manual activities were only incidental to their overarching primary duty to provide safety and security for their clusters, which is, on the whole, a non-manual job.

Finally, the mere fact that Plaintiffs performed some manual work in the form of making arrests and breaking up fights between students does not preclude the application of the administrative exemption. *Schaefer,* 358 F.3d at 401–02 (an employee can perform some manual labor without losing exempt status); *Johnson,* No. 03–2775, 2004 WL 1586552, *9, 2004 U.S. Dist. LEXIS 13251, at *28 (plaintiff was administratively exempt despite spending the majority of his time performing manual labor); *White,* 656 F.Supp. at 1170 (office or non-manual requirement "does not completely prohibit the performance of manual work by an 'administrative employee' "); *see also Auer v. Robbins,* 65 F.3d 702, 721 (8th Cir.1995) (internal affairs officer found to be an exempt administrative employee); *Sprague v. U.S.,* 230 Ct.Cl. 492, 677 F.2d 865, 869 (1982) (postal inspectors, even those engaged in "pure law enforcement," are exempt administrators).

For all of these reasons, the Court finds that as a matter of law Plaintiffs' primary duty involved non-manual work.

**(c) Directly Related To Management Or General Business Operations**

■ Next, the Court examines whether Plaintiffs' primary duty is "directly related to the management or general business operations of the employer." This phrase describes those types of activities that relate to the administrative operations of a business as distinguished from the production operations.

The regulations provide that "work directly related to management or general business operations includes, but is not limited to, work in functional areas such as ... safety and health." 29 C.F.R. § 541.201(b).[6] In addition, work "directly related to management or general business operations" must be "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).

The Court is well aware that police officers ordinarily do not satisfy this element of the administrative exemption. Indeed, the regulations expressly state that police officers typically are not administratively exempt because "their primary duty is not the performance of work directly related to the management or general business operations of the employer or the employer's customers as required under § 541.200." See 29 C.F.R. § 541.3(b)(1)(3).

However, the Court agrees with Defendants that there is a critical distinction between police officers who work for a law enforcement agency and Plaintiffs, who are employed by the School System, due to the difference in the nature of their respective employers' businesses. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903 (3d Cir.1991) ("[I]t is important to consider the nature of the employer's business when deciding whether an employee is an administrative or production worker"); *Feiler v. Hyatt Corp.*, No. 98–2863–CIV, 1999 U.S. Dist. LEXIS 23407, at * 17–19 (S.D.Fla. Dec. 8, 1999) (emphasis is on the business of the employer); *see also* Ellen C. Kearns, *The Fair Labor Standards Act* § 4.VI.C.2 (BNA Books 1999) (explaining that an employee who performs the same job for different employers may be exempt with regard to one employer and not exempt with regard to the second).

Importantly, the Department of Labor ("DOL") has drawn a distinction, which is instructive in this case, between employees who perform "administrative" work versus those whose work is related to "producing" the goods or services that the employer exists to produce or market.[7] *See* Preamble to 29 C.F.R. Part 541, 69 Fed.Reg. 22141; *see also Reich v. New York*, 3 F.3d 581, 587–89 (2d Cir.1993); *Dalheim*, 918 F.2d at 1230. Thus, individuals whose primary duty is law enforcement are typically found to be non-exempt when employed by a law enforcement agency because the employees are producing the end product that the agency exists to produce—security to the public. *Reich*, 3 F.3d at 587–89; *see also* 29 C.F.R. § 541.3(b). Stated another way, because law enforcement agencies are in the business of providing protection and

---

6. In conjunction with the executive exemption to the FLSA, the regulations also define "management" to include "providing for the safety and security of the employees or the property." 29 C.F.R. § 541.102.

7. Although the "production/staff" dichotomy is no longer specifically included in the regulations, the DOL has stated that it continues to be a useful analytical tool in evaluating whether an employee's primary duty is work directly related to management or general business operations. *See* Preamble to 29 C.F.R. Part 541, 69 Fed.Reg. 22141.

security to the public, police officers are the line workers of the police department.

By contrast, the School System is in the business of educating students, not providing law enforcement. Thus, rather than producing the School System's end product of education, Plaintiffs are servicing the School System's business of education.[8]

In this sense, the law enforcement component of the SRO position is analogous to the position of United States postal inspectors, who the DOL and courts have determined are exempt under the administrative exemption. *See Dymond v. U.S. Postal Serv.*, 670 F.2d 93, 95–96 (8th Cir. 1982); *Sprague*, 677 F.2d at 865; *Locker v. Bolger*, 644 F.2d 39, 25 Wage & Hour Cases (BNA) 231 (D.C.Cir.1981); December 27, 1976 DOL Wage and Hour Opinion Letter.

Like SROs, postal inspectors carry firearms, make arrests, serve warrants and investigate crimes. Despite their law enforcement duties, the DOL and courts have ruled that postal inspectors, even those engaged in "pure law enforcement," are administratively exempt. *See, e.g., Sprague*, 230 Ct.Cl. 492, 677 F.2d 865. The DOL and courts have reasoned that unlike a law enforcement agency, the United States Postal Service is not in the business of fighting crime. Rather, the Postal Service delivers the mail, and postal inspectors provide a safety and security function related to that mission.

Like postal inspectors, Plaintiffs were not "producing" the end product that Defendants exist to create—education—and they are therefore distinguishable from police officers who work for a law enforcement agency. Unlike police officers who are engaged in the production of the police department's end product, Plaintiffs are affecting and implementing the School System's safety policies and procedures, a function that is contemplated by the regulations as an administrative duty. *See* 29 C.F.R. § 541.201(b) ("work directly related to management or general business operations includes, but is not limited to, work in functional areas such as ... safety and health").

As Plaintiffs testified, the School System could not achieve its goal of educating students unless the school environment is safe and secure. Plaintiffs' work directly affected the School System's safety policies, thereby satisfying the requirement of performing work that is directly related to the management or general business operations of one's employer. *See Bosch*, 2005 WL 357411, *6, 2005 U.S. Dist. LEXIS 5034, at *19; *White*, 656 F.Supp. at 1170. Consequently, the Court finds that as a matter of law Plaintiffs' primary duty of providing safety and security for the people and property within their respective clusters is "directly related to the management or general business operations" of the School System.

**2. The Exercise of Independent Judgment and Discretion with Respect to Matters of Significance**

■ Because Plaintiffs' primary duty involved non-manual work directly related to

---

**8.** In *Auer v. Robbins*, the Eighth Circuit Court of Appeals further demonstrated this production/staff dichotomy in explaining the difference between internal affairs officers and officers who perform typical law enforcement activities. 65 F.3d 702, 721 (8th Cir.1995). Specifically, the Court held that even though the internal affairs officers are police officers, "they perform internal investigations to en-

sure that the officers within the department are complying with its policies ... [rather than] typical law enforcement activities," and they therefore are not engaged in the " 'production' activities" of the police department. *Id.* Based on this distinction, the Court found that the internal affairs officers were administratively exempt from the FLSA's overtime provisions. *Id.*

the School System's management or general business operations, Plaintiffs fall within the administrative exemption if their primary duty also included the exercise of independent judgment and discretion with respect to matters of significance. On this issue, the regulations state that:

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a). Section 541.202(c) further provides that "[t]he exercise of discretion and independent judgment implies that the employee has the authority to make an independent choice, free from immediate direction or supervision." Factors to consider in determining whether an employee exercises independent judgment and discretion include:

[W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). The primary duty need only include the exercise of independent judgment and discretion, and, generally, employees who meet at least two or three of these indicators satisfy this requirement. *See* Preamble to 29 C.F.R. Part 541, 69 Fed.Reg. 22122, 22143.

The parties do not dispute that safety and security are matters of significance within the School System. It is further undisputed that Plaintiffs are relatively free from supervision in their daily activities. They render advice to their schools on safety and security matters; serve as a liaison between the School System, local law enforcement agencies, and the community; initiate and direct investigations; and independently determine whether to make arrests or refer matters for prosecution. In the course of these activities, Plaintiffs also implement and formulate the School System's safety policies.

Therefore, the Court finds that as a matter of law Plaintiffs' primary duty of providing safety and security to their clusters includes the exercise of independent judgment and discretion with respect to matters of significance. *See* 29 C.F.R. § 541.202; *Dymond,* 670 F.2d at 95 (postal inspectors exercise independent judgment and discretion because they make "unsupervised recommendations on security and safety matters [,] ... determine when a situation requires immediate action, and ... determine whether an alleged postal violation warrants prosecution or is a minor technical violation which should not be presented to the United States Attorney for prosecution"); *Auer,* 65 F.3d at 720–21 (internal affairs officers who are hired be-

cause they "can think on their feet," who are relatively free from supervision in performing their duties, and who have the authority to decide whether to initiate investigations or whether to charge with a violation of law exercise independent judgment and discretion); *Adams,* 27 Fed.Cl. at 19 (investigators who "work under only general supervision" and "use their 'own judgment' in determining case referrals and when to initiate investigations" exercise independent judgment and discretion); *White,* 656 F.Supp. at 1171 (that plaintiff was selected for job "because of extensive education and experience in the area," was "in charge of organizing employee training sessions on security and safety matters ... [, and] had little, if any, supervision" indicates that plaintiff had the authority to exercise independent judgment and discretion).

■ For all of these reasons, the Court finds that Defendants have carried their burden of showing that Plaintiffs are exempt from the FLSA's overtime provisions under the administrative exemption.

## III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment [87] is GRANTED, and Defendants' motion to strike Plaintiffs' expert report [129] is DENIED AS MOOT. The CLERK is DIRECTED to close this case.

IT IS SO ORDERED.