**BALTIMORE COUNTY FOP LODGE 4, et al., Plaintiffs**

v.

**BALTIMORE COUNTY, et al., Defendants.**

**Civil No. AMD 06–2709.**

United States District Court, D. Maryland.

June 29, 2008.

Bruce R. Lerner, Kathleen M. Keller, Warren Gary Kohlman, Bredhoff and Kaiser PLLC, Washington, DC, for Plaintiffs.

Paul McLane Mayhew, Towson, MD, for Defendants.

MEMORANDUM and ORDER

ANDRE M. DAVIS, District Judge.

This case presents the question whether Baltimore County police officers are entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 207 et seq., ("FLSA"), when they work at events held at county schools during after-school hours. More than 60 police officers and their union filed the case in the Circuit Court for Baltimore County against the County, the County Police Department, and the County Board of Education.[1] Defendants timely removed the action to this court; the Police Department and the Board of Education were subsequently dismissed, leaving only the County as defendant. Discovery has concluded and the parties have filed cross-motions for summary judgment. Briefing of the motions is complete and a hearing has been held. For the reasons stated on the record and as elaborated herein, the motions are denied.

I.

In 1997, the County Police Department and the County Board of Education entered into an agreement to establish in county middle schools and high schools the position of School Resource Officer ("SRO"). An SRO is a full-time, uniformed police officer who is assigned to work in a particular school during the academic day where he or she ensures a safe learning environment, establishes positive relationships with students, works cooperatively with school personnel to prevent disruptive conduct, and performs other duties. The SRO remains subject to the chain-of-command in the Police Department and may report to his or her assigned precinct station in the morning before the academic day begins. Nevertheless, the SRO works in the designated school without immediate oversight of his day-to-day activities by police supervisors. Since the program's inception, it has proven successful and has grown to include an SRO for every county high school and many of the middle schools.

An additional aspect of the SRO's job duties relates to the preexisting practice of using county police officers to provide security during after-hours school events such as dances and athletic contests. An SRO is expected to attend extracurricular events at his or her school "when feasible" and personally to arrange for colleagues to work such events in the absence of the regularly assigned SRO. When the SRO, or the officer substituting for him or her, works school events after-hours, the officer is not compensated at FLSA's "one and one-half" overtime rate; rather, the officer is paid a flat wage of approximately $32 per hour, which is paid by, and from the funds of, the Board of Education.

The gist of plaintiffs' claim is their contention that overtime pay is due and payable to plaintiffs for after-hours, school-based work, whether the after-hours, school-based work is performed by officers normally assigned as SROs or by non-SRO officers who substitute for SROs. Plaintiffs contend that the SROs and non-SRO police officers who work at extracurricular events should be paid FLSA's overtime rate for that work to the extent that it, combined with their regularly assigned work, exceeds FLSA's threshold for regular work hours. In plaintiffs' view, when an SRO or non-SRO substitute works at an after-hours function, he or she is just as much employed by the Police Department as he or she is during the regular school day (for SROs) or while on a regular shift (for non-

---

1. I agree with the County that I need not determine, at least not for present purposes, whether the union has organizational standing in this case.

SROs), performing fundamentally *law enforcement* duties. Alternatively, plaintiffs argue that if the School Board employs the SRO when he or she works at an extracurricular activity, he or she is still entitled to aggregate that time with regular hours for FLSA purposes under the "joint employer" theory.

Defendant contends, to the contrary, that neither the SROs nor the non-SRO officers are entitled to overtime pay for work at after-hours school activities. First, the County argues that SROs are exempt from FLSA's overtime pay requirements as "administrative employees." Furthermore, the County contends that both SROs and non-SROs are employed by the Police Department during their regular hours, but by the Board of Education during after-hours assignments. Thus, says the County, when they work at extracurricular activities, all officers are engaged in "secondary employment," every bit as much as those who work for private entities such as retail merchants, and the procedural incidents of obtaining permission and clearance to do so is the same. Finally, the County contends that the officers' participation in after-hours work in the schools is entirely voluntary, and falls within the FLSA's "specific detail" exemption applicable to police officers.

## II.

■ In addition to their merits arguments, plaintiffs quite correctly argue that the County waived its affirmative defenses, afforded under the FLSA, based on the "administrative employee" exemption, *see* 29 U.S.C. § 213(a); 29 C.F.R. 541.200(a), and the "special detail" exemption, *see* 29 U.S.C. § 207(p)(1); 29 C.F.R. 553.227, by failing to plead those defenses in its answer to the complaint.[2] The County argues that this omission was an innocent mistake that did not prejudice plaintiffs. It requests that its motion for summary judgment be construed as a motion to amend its answer to include the omitted defenses. *See Schwind v. EW & Assocs.,* 357 F.Supp.2d 691 (S.D.N.Y. 2005)("[W]here an affirmative defense is asserted for the first time in support of a defendant's motion for summary judgment, a court may construe the summary judgment motion as a motion to amend the answer.").

■ I am persuaded that the County should be permitted to amend its answer to assert these defenses. Any potential prejudice to plaintiffs may be wholly cured with a small window of additional discovery. Under the circumstances of this case, where plaintiffs have not been unduly prejudiced by the County's error, it would elevate form over substance to deny the County the opportunity to present all of its legal arguments. *See* FED.R.CIV.P. 15(a) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, I will permit the amendment of the County's answer to correct the omission of the affirmative defenses afforded by the "administrative employee" exemption and the "special detail" exemption.

## III.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any materi-

---

2. Exemptions from the FLSA's overtime pay requirements are "narrowly construed." *Walton v. Greenbrier Ford, Inc.,* 370 F.3d 446, 450 (4th Cir.2004)(citing *Auer v. Robbins,* 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)). Furthermore, defendants in FLSA cases have the burden to "prove by clear and convincing evidence that an employee qualifies for exemption." *Shockley v. City of Newport News,* 997 F.2d 18, 21 (4th Cir.1993).

al fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering the motion and evidence in support, the court draws all permissible inferences in favor of the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is sufficient evidence favoring the nonmoving party for a reasonable jury to reach a verdict in his favor, summary judgment is improper. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV.

The parties pressed multiple merits arguments in their submissions and at the hearing. As indicated on the record, I am satisfied that genuine disputes of material fact, including the drawing of ultimate inferences through the application of legal standards to facts, precludes summary disposition of the critical issues in this case.[3] I deem it appropriate, however, to elaborate more formally on my view that the summary judgment record will not support resolution as a matter of law the "specific detail" defense, which was especially pressed by the County at the hearing.

## A.

■ The statutory provision on which the County relies provides in relevant part:

> If an individual who is employed by a … political subdivision of a State … in … law enforcement activities … and who, solely at such individual's option, agrees to be employed on a special detail by a separate or independent employer, … the hours such individual was employed by such separate and independent employer shall be excluded by the public agency employing such individual in the calculation of the hours for which

---

**3.** To be sure, as I indicated to counsel at the hearing, it is my preliminary impression that the County and the School Board are likely "joint employers" with respect to the SRO plaintiffs (thereby entitling them, *prima facie,* to overtime pay for after-hours work) but not with respect to the non-SRO plaintiffs. *Cf. Schultz v. Capital Int'l Security, Inc.,* 466 F.3d 298, 306 (4th Cir.2006). Also, while the County's "administrative employee" defense may ultimately prevail, inasmuch as the County bears the risk of non-persuasion on that defense, *see infra* note 2, that defense may not be resolved as a matter of law. *Ferrell v. Gwinnett County Board of Education,* 481 F.Supp.2d 1338 (N.D.Ga.2007), on which the County heavily relies in respect to that defense, involves School Resource Officers whose circumstances are clearly distinguishable from those in the case at bar. The Gwinnett County SRO program required an officer to have a minimum of ten years of law enforcement experience and a college degree. There, the officers earned approximately $10,000 more than regular police officers of comparable qualification; Baltimore County has no such requirements. *Id.* at 1340. Moreover, the Gwinnett County SROs were employed by the Board of Education during regular work hours and they were responsible for multiple schools; Baltimore County's Police Department employs SROs during the academic day and each officer is responsible for only one school. *Id.* at 1340, 1346. Finally, by the time of the *Ferrell* decision, the plaintiffs had been reclassified by the school system and were treated as non-exempt for FLSA purposes. *Id.* at 1339. In light of these distinctions, the *Ferrell* decision, while instructive, is hardly on all fours with the case at bar.

In any event, it goes without saying that merely because I have denied the cross-motions for summary judgment, trial motions for judgment as a matter of law as to one or more issues remain very much available to the parties.

the employee is entitled to overtime compensation ... if the public agency—

(A) requires that the employees engaged in ... law enforcement ... be hired by a separate and independent employer to perform the special detail;

(B) facilitates the employment of such employees by a separate and independent employer, or

(C) otherwise affects the condition of employment of such employees by a separate and independent employer.

29 U.S.C. § 207(p)(1). The Department of Labor's interpretive regulation distills this provision to a two-pronged analysis under which the exemption is properly applied where: "(1) The special detail work is performed solely at the employee's option, and (2) the two employers are in fact separate and independent."[4] 29 C.F.R. 553.227(b).

■ Here, the County asserts that the defense is established as a matter of law because all plaintiffs perform the after-hours work "solely at the employee's option" and because, as a matter of law, the County and the County School Board are "in fact separate and independent" employers. I agree, however, that plaintiffs have generated genuine disputes of material fact on these issues.

## B.

First, plaintiffs vigorously dispute whether any of them, but especially the SROs, perform the after-hours work entirely voluntarily. Certainly, there is substantial evidence that, whatever official *encouragement* may have been given to the plaintiffs here to work extra hours, their work during after-hours events at schools was on a voluntary basis. On the other

hand, plaintiffs stress that they "believe they are obligated" to work after-hours events and rely heavily on the Memorandum of Understanding describing the role of the SRO, which provides that SROs will perform such work "when feasible." *Pls.' Mem. in Supp. of Partial Sum. J.*, p. 8; Resource Officers' Program Agreement (MOU), *Def.'s Mot. for Summ. J.*, ex. 1, p. 15. There is anecdotal evidence in the record, as well, that *implied* expectations were communicated to SROs regarding their after-hours responsibilities, and that SROs were not free to ignore those *implied* expectations. Moreover, there is substantial evidence that the performance evaluations of SROs included supervisors' comments on their availability for after-hours work. (It is undisputed, as well, that SROs have a responsibility to solicit coverage for after-hours events at their school.) In short, there is a significant practical and legal difference between "encouraging" voluntary participation in secondary work and explicitly or impliedly ordering, demanding or directing a subordinate to do such work. The issue of which side of that line this case falls is for the finder of fact.

## C.

The second prong of the "special detail" inquiry requires exploration of the meaning of "separate and independent employers." The term is not defined by the statute or the regulation, and the interpretation of this requirement is an issue of first impression in the Fourth Circuit. The implementing regulations provide only that "[w]hether two employers are, in fact, separate and independent can only be determined on a case-by-case basis." 29 C.F.R. 553.227(c). Nonetheless, the court

---

**4.** Under the circumstances of this case, it is clear that the Police Department "facilitates the employment" of its personnel by the

School Board for after hours events and this requirement is not in dispute.

is not without guidance as Congressional intent surrounding this provision is apparent from the legislative history and the meaning of "separate and independent" has been examined by a handful of district courts and the Department of Labor.

Congressional intent in enacting the specific detail exception to FLSA is relevant to this analysis. In the legislative history, Congress offered illustrative examples of employment relationships to which the special detail exception would apply, including "the police officer who accepts extra employment from a school board to direct traffic at a football game." S. REP. NO. 99–159, at 12 (1985). Congress also plainly envisioned that some "joint employers" would be "separate and independent" for purposes of this exemption.[5] *Id.* at 13.

■ The Department of Labor and several district courts outside this Circuit have also weighed in on the meaning of "separate and independent" employment. A 2006 Department of Labor Opinion Letter provides a helpful synopsis of factors relevant to the "separate and independent" inquiry, including the Census of Governments dependency classification and seven enumerated considerations. Dep't of Labor Op. Ltr., WH–535, 2006 WL 4512963 (Mar. 18, 2006):

> (1) whether the employers have separate payroll systems; (2) whether the employers have separate retirement systems; (3) whether the employers have separate budgets and funding authorities; (4) whether the employers are separate legal entities with the power to sue and be sued; (5) whether the employers

deal with each other at arm's length concerning the employment of the individuals in question; (6) how the employers' relationship is treated under state law; and (7) whether one employer controls the appointment of the officers of the other agency.

The cases addressing this issue and the Department of Labor opinions emphasize that no single factor is dispositive in the analysis. E.g., *Johnson v. Unified Gov't of Wyandotte County/Kansas City, KS,* 127 F.Supp.2d 1181, 1189 (D.Kan. 2000)("[T]here is no hard-and-fast test for determining whether two employers are separate and independent."). In the 2006 letter, the Department opined that the municipal board at issue was separate and independent from the city itself. Dep't of Labor Op. Ltr., 2006 WL 4512963. The principal factor suggesting dependence was the fact that the board received the majority of its funds from the city; however, state law directed the board to identify its financial needs and required the city to provide for those needs within certain parameters. *Id.* Under those circumstances, the city's financial input was not a strong indicium of the city's control over the board.

In an earlier opinion letter, the Department of Labor focused heavily on the financial and management control exercised by a county over the local schools in determining that the entities were not separate and independent for purposes of § 207(p)(1). Dep't of Labor Op. Ltr., 1993 WL 901149 (Jul. 1, 1993). There, the De-

---

5. The implementing regulations are consistent with this expectation, noting that the special detail exemption can apply even where "a State law or local ordinance requires that such work be performed and that only law enforcement officers ... perform the work." 29 C.F.R. 553.227(e). Furthermore, the regulations specifically envision a relationship wherein a police department could permissibly select the personnel to participate in secondary employment, require the secondary employer to pay for services through the department, and discipline officers for conduct occurring during their secondary employment. 29 C.F.R. 553.227(d).

partment of Labor opined on the need to pay county police officers FLSA overtime pay for time spent performing security services in county vocational schools. In concluding that the special detail exception did not apply, the Department focused on the Census of Government's characterization of the schools as dependent agencies of the county. While this alone was not sufficient to conclude that § 207(p)(1) did not apply, the Department further noted that the county controlled appointments to the school board and supplied forty-five percent of the vocational schools' funding.

One of the earliest reported judicial opinions interpreting the "separate and independent employer" requirement of the special detail exception applied the above considerations in a fact intensive analysis to conclude, after a "trial on the papers," that § 207(p)(1) applied to Chicago police officers who provided law enforcement services for the Transit Authority and the Housing Authority. *Nolan v. City of Chicago,* 125 F.Supp.2d 324 (N.D.Ill.2000). The *Nolan* court considered several factors relating to the formal, institutional independence of the Transit and Housing Authorities as well as practical indicia of the City's control over the agencies. *Id.* at 334–35. In *Nolan,* the financial considerations, along with essentially all other factors, indicated that the employers were separate and independent, and accordingly the special detail exception applied.

Generally, courts have given significant weight to the employers' economic relationship because, as a practical matter, control of an agency's purse strings is often control of the agency. *Barajas v. Unified Gov't of Wyandotte County/Kansas City, KS, et al.,* 87 F.Supp.2d 1201 (D.Kan.2000)(denying summary judgment because the record lacked evidence of the employers' financial relationship, thereby precluding a decision as a matter of law

that they were separate and independent); *Cox v. Town of Poughkeepsie, NY,* 209 F.Supp.2d 319 (S.D.N.Y.2002)(finding the special detail exemption inapplicable where work performed for both employers was consolidated into a single payroll).

The analyses applied by other courts addressing the separate and independent requirement is generally consistent and consistently well-reasoned. Those courts evaluated the many factors which bear on the employers' relationship but appropriately gave particular weight to the degree of financial independence enjoyed by the putative secondary employer. Nonetheless, the relative importance and weight of the several relevant factors are not clearly defined. Where there is a close call, meaning that the record evidence includes factors that point in both directions, in support of and against the employers' independence, assigning greater weight to one consideration than another can be dispositive. In such a case, the summary judgment standard and its requirement that all inferences be drawn in favor of the nonmoving party can be fatal to both parties' motions where, as here, cross-motions are filed.

### D.

The circumstances of the case at bar illustrate that a reasonable fact finder's decision of how to balance the many relevant factors could reasonably yield a result in favor of either party. Plaintiffs point out that the School Board (1) receives fifty-four percent of its funding from the County; (2) must have its budget approved in 13 distinct categories by the County; and (3) is characterized as a dependent agency by the Census of Governments. *RFA Nos.* 53, 54; Decl. of Libby Rowe, Attach. 9 (2002 Census of Governments, Individual State Descriptions, Maryland). Yet, supporting the County's con-

tention that it is separate and independent from the School Board are the facts, *inter alia,* that the two entities have separate payroll and retirement systems, and, under state law, are clearly separate legal entities, each with authority to sue and be sued. MD.CODE ANN., STATE PERS. & PENS. § 23–206, Educ. §§ 3–104(a), (b)(2). The parties dispute whether the County and the School Board deal at arms length concerning the after-hours employment of police officers in the schools. In sum, there is substantial evidence to support either decision a fact-finder might make on the separate and independent issue and in that light, summary judgment on the special detail affirmative defense is inappropriate.

## V.

For the reasons stated above and on the record at the hearing, the motions for summary judgment are DENIED. Defendant Baltimore County is granted leave to amend its answer for the limited purpose of adding as affirmative defenses the administrative employee and special detail exemptions; the amended answer shall be filed on or before July 14, 2008. Plaintiffs are granted an additional 90 days from the date of this Memorandum and Order in which to conduct further discovery as to those defenses. Thereafter, the court will hold a status conference with the parties to structure further proceedings.

SO ORDERED.